Railroad Commission of Texas v. Weld & Neville et al.

No. 1136. Decided April 13, 1903.

**1.—Railroad Commission—Contesting Rates—Test of Reasonableness.**

The power, conferred on the courts by arts. 4565, 4566, Rev. Stats., to deter-mine the reasonableness of rates of freight fixed by the Railroad Commission, is not limited to an inquiry whether such regulation amounts to the taking of property without compensation, prohibited by the Constitution. Railroad Com-mission v. Railway Co., 90 Texas, 353, 354, followed. (P. 403.)

**2.—Same—Constitutional Law—Conferring Legislative Power.**

The power given to courts to determine the reasonableness of rates fixed by the Railroad Commission is not a conferring of legislative authority upon them, prohibited by the Constitution. (Pp. 403, 404.)

**3.—Railroad Commission—Unreasonable and Unjust Rates—Discrimination.**

Rates established by the Railroad Commission are not shown to be unreason-able and unjust to a complainant, where the same rate per hundred pounds is allowed to him as to his competitors, by proof that cotton shipped by him, by the use of appliances which he controlled, was compressed to a greater density, allowing more to be shipped to the car, was not subject to injury by fire or water, and hence could be safely shipped on flat cars, and could be carried more cheaply and yield the carrier a greater profit per hundred, unless a rate by carload in-stead of by weight merely, was allowed by the commission. (Pp. 404, 410.)

**4.—Same.**

It seems that the commission, in fixing rates, may make discrimination in the relative rates on different forms of the same product, as on different products or articles, as public interest demands, and may properly consider the probable effect of a carload rate in creating a monopoly in the handling and marketing of a product, through the advantages possessed by those controlling the form in which it could be most cheaply transported by the carload; and this, being a legislative function committed to it, can not be controlled by the courts. (Pp. 407-410.)

Error to the Court of Civil Appeals for the Third District, in an ap-peal from Travis County.

Weld & Neville, Dorance, Cairns & Co., Hasler & Boyd, D. M. Howard, and T. G. Cole sued the Railroad Commission of Texas and had judg-ment, from which the plaintiff appealed. The case, on writ of error from a judgment dismissing the appeal, is reported in 95 Texas, 278. Being there remanded to the Court of Civil Appeals, the judgment of the District Court was affirmed and the Railroad Commission obtained writ of error.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant Attorney-General, for plaintiff in error.—The Court of Civil Appeals erred in overruling petitioners' first assignment of error, complaining of the action of the District Court in overruling petitioners' general demurrer to plaintiffs' original petition.

This is a novel case. We venture to say that it is the only case on record where a person charged the same rate charged others for the transportation of the same commodity or article of trade, and possessing the same value, has gone into court with a complaint of discrimination.

This novel proposition should be understood and appreciated at the out-set, for it is all there is in the case. Certainly it is untenable at the common law. While common carriers were required by the common law to carry for all and afford facilities for all desiring to employ them, yet as to rates it is well settled that they were not required to treat all alike, but might make reasonable discriminations. Baxendale v. Eastern Counties Railway Co., 4 C. B. N. S., 63; Great Western Railway Co. v. Sutton, 4 H. L., 226, 237; Ransome v. Eastern Counties Railway Co. 1 C. B. N. S., 437; Hutcheson, Carriers, sec. 302; 4 Elliot, Railroads, sec. 1467; Fitchburg Railway Co. v. Gage, 12 Gray, 399; Cleveland, etc., Railway Co. v. Closser, 126 Ind., 348; Menacho v. Ward, 27 Fed. Rep., 529; Johnson v. Pensacola Railway Co., 16 Fla., 623; Ex parte Benson, 18 S. C., 28; Canada Southern Railway Co. v. International Bridge Co., 8 Appeal Cases, 723, 731, 732. This was fully recognized by this court in Houston & T. C. Railway Co. v. Rust, 58 Texas, 98.

The Court of Civil Appeals erred in overruling petitioners' second assignment of error complaining of the action of the District Court in overruling petitioners' second demurrer to plaintiffs' petition, which demurrer reads as follows: "The action of the Railroad Commission in fixing rates and providing classifications of commodities is a legislative act, and it is not within the province nor the power of the courts to review the action of the Legislature in fixing rates or making classifications of commodities to be shipped over the railroads in this State, whether such action is taken by the Legislature directly or through an agency to whom the Legislature had delegated authority to act for it. It is not within the power of the Legislature to confer such jurisdiction upon the courts, if they have attempted to do so. Such attempted action would be in violation of the Constitution, which separates the functions of government into legislative, executive and judicial departments. State v. Railroad Co., 38 Minn., 298; sec. 1, art. 2, State Constitution; sec. 2, art. 10, State Constitution; Steenerson v. Great Northern Railway Co., 8 Am. and Eng. R. R. Cases (N. S.), 567, 605, 604, 613; Reagan v. Trust Co., 154 U. S., 362; Chouteau v. Union Railway Co., 22 Mo. App., 302; Tilley v. S. F. & W. Railway Co., 5 Fed. Rep., 653; Delaware Railway Co., v. Central Stock Yards Co., 43 N. J. Eq., 81; Georgia Railway Co. v. Smith, 70 Ga., 694; San Diego Water Co. v. City of San Diego, 62 Am. St. Rep., 291, note.

The Court of Civil Appeals erred in overruling petitioners' third assignment of error, complaining of the action of the District Court in overruling defendants' second demurrer to plaintiffs' petition, which reads as follows: "The Legislature has conferred upon the Railroad Commission of Texas authority to fairly and justly classify and sub-divide all freight and property that may be transported over the rail-roads in this State into general and special classes or subdivisions, and to fix to each class or subdivision a reasonable rate for the transportation of each of said classes or subdivisions. The Railroad Commission in so doing is exercising the authority which the Legislature itself possessed,

and is clothed with the same discretion in the exercise of its authority as the Legislature would be. In fixing classifications and rates, the commission is clothed with discretion, and its acts, within the limits of their discretion, are not subject to be reviewed by the courts." Rev. Stats., art. 4562; Railroad Commission v. Houston, etc., Railway Co., 16 Texas Civ. App., 135; Railway Co. v. Dey, 35 Fed. Rep., 878; Steenerson v. Railway Co., 8 Am. and Eng. R. R. Cases (N. S.), 605; Dow v. Beidelman, 125 U. S., 691.

The Court of Civil Appeals erred in overruling petitioners' fourth assignment of error, complaining of the action of the District Court in overruling defendants' third demurrer to plaintiffs' petition, reading as follows: "The law does not prohibit discrimination in rates or classifications. It is only unjust discriminations which are prohibited, and the question of what is an unjust discrimination is purely and necessarily a matter for the discretion of the legislative branch of the government, which acts through the Railroad Commission, in fixing rates and determining classifications." Steenerson v. Great Northern Railway Co., 8 Am. and Eng. R. R. Cases (N. S.), 609; Rice v. Louisville & N. Railroad Co., 33 Am. and Eng. R. R. Cases, 593; Brownell v. C. & C. M. Railroad Co., 5 Int. Com. Rep., 638; 1 Int. Com. Rep., 305.

The Court of Civil Appeals erred in overruling petitioners' sixth assignment of error, complaining of the action of the District Court in overruling defendants' fifth demurrer to plaintiffs' petition, reading as follows: "Plaintiffs are not complaining because some one else is accorded greater privileges than are conceded to them, but are asking to have a discrimination made in their favor."

*Hutcheson, Campbell & Hutcheson,* for defendants in error.—The common law required carriers of freight and passengers, as well as keepers of ferries, etc., to charge a just and reasonable compensation for their services to the public, and permitted any person of whom an unreasonable or unjust rate was exacted to recover back from the company any sum in excess of what was just and reasonable, and the shipper was never required to show that they were so unjust and so unreasonable as to amount to a confiscation of the property, or the taking of it without compensation. Also to complain of unjust discrimination. The courts decide such questions just like any other question of injustice and without any cast iron rule of law as to the length, breadth, depth and height. "It must carry, when called upon to do so, and can charge only a reasonable sum for the carriage. In the absence of any legislative regulation upon the subject, the courts must decide for it as they do for private persons when controversies arise as to what is reasonable." Chicago Railway Co. v. Iowa, 94 U. S., 161; Munn v. Illinois, 94 U. S., 113-154; Houston & T. C. Railway Co. v. Rust, 58 Texas, 105; Chicago, B. & Q. Railway Co. v. Jones, 149 Ill., 374; Water Co. v. Fergus, 178 Ill., 577; Central Union Tel. Co. v. State, 118 Ind., 194; Laurel Fork v. Transportation Co., 25 W. Va., 324; Lough v. Outerbridge, 143 N. Y.. 277;

Barrington v. Dock Co., 15 Wash., 175; Scofield v. Railroad Co., 43 Ohio St., 618; Johnson v. Pensacola, 16 Fla., 623; Ragan v. Aiken, 9 Lea, 609.

In addition to this common law right, the legislatures of the mother country and of the States of this Union provide against unreasonable and unjust discriminations, and such was the statute of this State anteceding the commission act, by virtue of which, and the law of the country, any shipper had the right to go into a court against a railroad company and complain both of an unjust or an unreasonable rate, and against an unjust discrimination between himself and other parties similarly situated, without resorting to the extremity of showing that the rate was confiscatory or without compensation. It was a question of fact, without any legal rules defining what is unreasonable. Houston & T. C. Railway Co. v. Rust, 58 Texas, 105; Texas & P. Railway Co. v. Interstate Commerce Com., 162 U. S., 219, 220; Texas & P. Railway Co. v. Interstate Commerce Com., 162 U. S., 197; Little Rock v. Oppenheimer, 43 S. W. Rep., 153.

We will next consider what right the parties would have in a court of justice if the Legislature in its own proper person had made a classification and fixed a schedule of rates, and had incorporated them in the enactment—with nothing more—and our proposition is: The authorities hold that in such a case a party affected has a right to come into court, but not to contest the reasonableness of the rate, for it being the law, its reasonableness or unreasonableness does not affect the question, and the party must show against this rate fixed by the law some unconstitutional feature invading his rights. This legislative attitude would put the law of the State against the plaintiff in the case and leave its constitutionality as the sole subject of investigation, whereas if the rate were not protected by this law, the question of its reasonableness, and of its constitutionality, would be the question before the court. Chicago & M. Railway Co. v. Minnesota, 134 U. S., 418.

If the Legislature, instead of fixing a rate in propria persona, had given unqualified power to a commission to fix the rate, and did not require that the commission should fix it justly and fairly and reasonably, then the same rule would apply, subject to a qualification we hereafter make, as in the case of where the Legislature made its own classifications and schedules.

Proceeding, then, to the fourth supposition: If the Legislature appoints a commission, but qualifies the power of that commission by directing that it shall fairly and justly classify and subdivide all freight and property, and should provide that it should fix to each class and subdivision a reasonable freight rate, there can be no dispute that the matter must have been intended by the Legislature to be left to judicial determination, without the embarrassment of determining whether a rate fixed by the commission was constitutional, and the court should look upon the legislative intention as more than a power, and almost a command that they should, to the extent of judicial power and judicial methods, determine the questions and try them on the usual significance

of such terms as they are understood in the English language, and "just as any other case is tried," as in the language of our own court. Rev. Stats., arts. 4562, subdivs. 1, 2, 10, 12; arts. 4564, 4565, 4566; Railroad Com. v. Houston & T. C. Railway Co., 90 Texas, 340; Texas & P. Railway Co. v. Interstate Com. Rep., 162 U. S., 197; Texas & P. Railway Co. v. Interstate Com. Rep., 162 U. S., 219; Interstate Commerce Com. v. Alabama Mid. Railway Co., 168 U. S., 170; Interstate Commerce Com. v. Baltimore, 145 U. S., 284.

Did the Legislature intend by the enactment of articles 4564 and 4565 to enlarge the power of the courts over the subject matter beyond what they previously had?

We submit the following proposition: The constitutional provision and the legislative enactment establishing this commission, both clearly indicated that they did not intend to leave the subject of railroad regulation where the common law did, with the limited ,restraints by the law and the meager methods of enforcement of the law in the courts at the same low ebb as they stood at the common law, but to enlarge the whole subject by adequate provisions in that regard; and the difficulties surrounding the question of the classification of freights and regulation of rates was so perplexing and grave that the Legislature was aware of its inability successfully to prescribe the rates and classification in a legal enactment, and therefore imposed this duty upon a railroad commission, but provided that the rates made and the classification should be "fairly and justly done," and to the attainment of this end of justice, subjected the tribuunal which they made to the ultimate decision of the courts, so that their acts should not operate unjustly or unfairly, either from ignorance and incapacity, partiality or bias, corruption, or any other source from which a rate or classification made might be unjust or unreasonable and unfair to the parties concerned, and to construe the statute otherwise is to do violence to its plainest purposes and the plainest interpretation of its provisions. Rev. Stats., art. 4562 and subdivs. 4563 and subdivs.; Railroad Commission v. Houston & T. C. Railway Co., 90 Texas, 340.

If the construction be that contended for by counsel for the Railroad Commission, the act of the Railroad Commission in refusing to give to the package of compressed cotton, represented by appellees, a rate commensurate to the density of its package, as compared with the ordinary compressed bale, denies to this appellee equal protection of the laws, and is unjust discrimination, and violates the Constitution of the United States and of this State. Myers v. Pennsylvania Co., 2 Int. Com. Rep., 403; 2 Int. Com. Rep., 573; Harvard Co. v. Pennsylvania Co., 3 Int. Com. Rep., 257, 4 Int. Com. Rep., 212; Murphy v. Wabash Railway Co., 3 Int. Com. Rep., 725, 5 Int. Com. Rep., 122.

The question as to whether the rate fixed by the commission and its declining to classify and give a rate to appellees was unfair and unjust to the appellees, was purely one of fact, and the statute requires that this case shall be tried "like any other case." The Supreme Court has so

held.   We contend that the decision of the trial court is supported by the uncontroverted testimony in this case; that he having found it to be unjust and unfair, is entitled to the same respect as in any other case, notwithstanding this court might not have reached the same result as the court below did.   The judgment must be clearly wrong, and wholly unsupported by the evidence.   Railroad Commission v. Texas C. Railway Co., 90 Texas, 340; Garner v. Cutler, 28 Texas, 185; Dimmitt v. Robbins, 74 Texas, 441; Railway Co. v. Somers, 78 Texas, 441; Railway Co. v. O'Donnell, 58 Texas, 44; Greenleve v. Blum, 59 Texas, 127; Railway Co. v. Marcelles, 59 Texas, 337; Chase v. Veal, 83 Texas, 334.

*Gregory & Batts,* also for defendants in error.   [From brief in Court of Civil Appeals.]—The courts of this State may review the action of the Railroad Commission in making classification and fixing rates.   Constitution, art. 2, sec. 1; Constitution, art. 10, sec. 2; Rev. Stats., art. 4565; Railroad Com. of Texas v. Houston & T. C. Railway Co., 90 Texas, 340.

The discretion exercisable by the Railroad Commission of Texas in making classifications, fixing rates, and doing anything else within the scope of their authority, is subject to review by the courts of the State in the exercise of their authority to declare such classifications and rates unreasonable and unjust .   Rev. Stats., art. 4565; Railroad Commission v. Houston & T. C. Railway Co., 90 Texas, 340.

The court did not err in overruling defendants' fourth special exception because:  1.  The rates fixed and classifications made are complained of as being unreasonable.  2.  The fact that after a rate is fixed improvements are made which enable the railroads to haul a part thereof at a reduced cost is not sufficient basis for raising the rate upon the part not subject to the improved process.  3.  When a rate is fixed a shipper has the same right to complain of its unreasonableness as a railroad company.  Rev. Stats., art. 4555.

Discrimination may consist of doing for, or allowing to, one party what is denied to another.   Or it may consist in treating parties alike when their situations and conditions are different.   The making of one classification for all products would be discrimination in favor of some and against others.   The making of one rate for all classes of freight would be discrimination in favor of the shippers of some classes and against shippers of other classes.

The reasonableness and justness of classifications and rates are matters of comparison.   The reasonableness and justness of a particular rate or classification are determined by comparison with other rates and classifications.   No rate can be said to be abstractly or absolutely just and reasonable or absolutely and abstractly unjust or unreasonable.   McMorran v. Grand. T. Railway Co., 3 Int. Com. Rep., 259; Squires v. Michigan C. Railway Co., 4 Int. Com. Rep., 621; Manufacturers and Jobbers Union v. Min. & St. L. Railway Co., 4 Int. Com. Rep., 79; Case of

Chicago, St. P. & K. C. Railway Co., 2 Int. Com. Rep., 265; Thurber v. N. Y. C. & H. R. Railway Co., 3 Int. Com. Rep., 507.

A regulation which provides for the same charge for hauling one car loaded with cotton from an initial point of shipment to the seaboard as for hauling four cars loaded with cotton from such point of shipment to a compress point and two cars loaded with cotton from the compress point to the seaboard, constitutes an unjust discrimination against the shipper requiring the smaller and less expensive service.

It is the duty of the Railroad Commission to establish reasonable and just rates of freight and reasonable and just classification, even if the incidental effect may be to injuriously affect established industries, and to enable the persons in a position to take advantage of those rates to create a monopoly.

The cost of the service rendered is the controlling element in making rates; immediate cost of transportation is the largest item of cost of service; the immediate cost of transportation is dependent upon the relation between weight of the rolling stock and the weight of the freight. In the making of classification the controlling element is the bulk of the commodity as compared with its weight, the extent of the ability of the commodity to utilize the carrying capacity of the car; in the making of rates the same element is controlling, after the general level of rates has been determined with reference to the necessity for revenue. Railroad Commission regulations as to compression of cotton; Railroad Commission wool tariff; Railroad Commission hay tariff; testimony of Julius Kruttschnitt before the commission to investigate the postal service; testimony of Samuel Spencer before the Commission to investigate the postal service; Squires v. Michican C. Railway Co., 4 Int. Com. Rep., 627; Chicago Board of Trade v. Chicago & A. Railway Co., 4 Int. Com. Rep., 158.

In determining whether the same rates and regulations should apply to the transportation of Lowry cotton and square cotton, the only element necessary to be considered is the cost to the railroad companies of the transportation.

The regulations of the Railroad Commission with reference to the transportation of cotton, the practical effect of which is a reduction of the rate when compression of the product has reduced the bulk one-half, with a corresponding reduction for a part of the haul of the rolling stock required, is reasonable and just; the refusal of the commission, all other conditions being the same, to make a corresponding reduction when compression has reduced the bulk to one-fourth of that of the original package, with the corresponding reduction for the entire haul in the rolling stock, is unreasonable and unjust. Houston & T. C. Railway Co. v. Railroad Commission, 16 Texas Civ. App., 129; Houston & T. C. Railway Co. v. Railroad Commission, 90 Texas, 340; New Orleans Cot. Ex. v. Illinois C. Railway Co., 3 Int. Com. Rep., 570.

The transportation to market of cotton compressed at the gin to a density of forty or more pounds per cubic foot does not involve any of

the expenses incident to the concentration for compression when prepared for market in the ordinary way; to fix the same rate for Lowry cotton and for cotton requiring concentration for compression is unreasonable and unjust to owners and shippers of Lowry cotton.

The transportation of cotton prepared for market by the Lowry system decreases the number of cars required to haul the crop, diminishes the number of cars that must be handled empty, facilitates the handling at the market, and thereby prevents congestions of cars at the seaboard and car famines in the interior; to refuse to recognize and allow for these advantages is unjust to plaintiffs, and unreasonable.

The incombustibility of Lowry cotton, its imperviousness to water, the ease with which it may be loaded and unloaded, are minor advantages over square cotton to be taken into consideration in connection with other merits in determining the relative reasonableness of rates.

*Crane, Greer & Wharton* also filed printed arguments for defendants in error.

BROWN, ASSOCIATE JUSTICE.—Under article 4565, Revised Statutes, the defendants in error instituted this suit in the District Court of the Twenty-sixth Judicial District, Travis County, against the Railroad Commission of Texas, and alleged in substance that the said Railroad Commission had established rules and regulations for the transportation of cotton from various points in Texas to Houston and Galveston as follows: For the territory extending not more than one hundred miles from Houston, the rate allowed to be charged upon cotton was based upon the length of the haul, but from all points more than one hundred miles from Houston, the same rate was allowed based upon one hundred pounds of weight whether in carload or less lots; with reduction of rate upon cotton compressed to a density of 22½ pounds to the cubic foot. It is alleged that the regulations of the commission require the railroad companies to cause the cotton to be compressed either at the initial point of shipment or at the first compress in the line of transportation; charges for compressing to be paid by the railroad company, except, for cotton shipped from points between seventy and one hundred miles from Houston, the charges of compressing are apportioned between the shipper and the railroad company, but cotton shipped from stations less than seventy miles from Houston is not required to be compressed.

The petition alleges that the regulations of the Railroad Commission, governing the shipping of cotton and fixing the rates thereon, were made with reference to the old system of handling cotton, which involves its compression at the gins in bales of 54 to 58 inches long, 28 to 36 inches wide, and from 24 to 28 inches thick, which must be hauled to the railroad station, thence by the carrier to the nearest compress, twenty-five bales being all that a car will carry in an uncompressed condition; but

after being compressed to a density of 22½ pounds to the cubic foot, fifty bales can be carried to the car.

Plaintiffs allege that they are interested in one of a number of improved economic methods of handling cotton in successful operation in Texas, and minutely describes the method by which a bale of cotton is produced by the Lowry system, which weighs two hundred and fifty pounds with a density of more than forty pounds to the cubic foot, being convenient in size and weight for handling, impervious to water and not combustible. With bales thus compressed the carrier can load cars to the limit of their capacity and the allowed excess, and can use flat cars in the transportation of the cotton without danger of injury from water or fire.

Plaintiffs allege that the cotton crop of Texas amounts annually to 3,000,000 bales, the greater part of which is gathered and shipped during the last four months of each year and all of it must be transported by the railroads of the State within that time, necessitating the ownership and use of a large number of cars at a heavy cost, which cars can not be used at other seasons of the year. That the demand for cars to carry cotton is so great as to often create car famine and great delay in the transportation of the cotton, which causes the railroad companies to resort to the use of flat cars that are unfit for that use and expose the cotton to damage by water and fire, whereby the railroad companies are subjected to heavy damages. The petitioners state minutely the supposed advantages that accrue to the railroad companies in shipping the Lowry bales of cotton over other freight or cotton otherwise compressed. Briefly stated, the allegations are, that the Lowry bales are not breakable; that they are not combustible nor liable to injury by water; save the expenses incident to short hauls and concentrating the cotton, and the difference between the cost of carrying two packages of the same weight, one compressed to the density of 22½ pounds to the cubic foot, and one to the density of 40 pounds to the cubic foot.

The petition charges that notwithstanding cotton properly compressed is the most desirable class of freight for railroad companies, the Railroad Commission has fixed upon cotton the highest charge for transportation. It is charged that in transporting the same weight of cotton as originally compressed and the Lowry bale the railroad company receives nearly twice as much freight for a carload of the Lowry bale as for a like carload of the other, and particular instances are cited to illustrate this proposition. It is averred in the petition that under the regulations complained of the railroad companies are given an extraordinary and unreasonable revenue and profit for transporting Lowry bales of cotton; that the revenue derived by railroads from handling cotton compressed under the new method is greatly in excess of that derived from cotton handled in the old way, and that the cost under the new method is so much less that to establish the same rate for both classes of cotton is unjust and inequitable and a discrimination against plaintiffs.

Plaintiffs allege that prior to the institution of this suit they twice called upon the Railroad Commission for proper hearing to establish reasonable rates for the transportation of cotton, which application the Railroad Commission refused, alleging as its reason that to grant the prayer of petitioners would give the owner of the improved bales practically a monopoly of the business of compressing cotton. It is alleged that the refusal to grant a hearing and the refusal to establish the regulations requested were unreasonable and unjust to plaintiffs; that the regulations requested were reasonable and just to defendants, and they prayed that the regulations be established by the court.

The Railroad Commission by the Attorney-General filed general demurrer and special exceptions which were by the court overruled, and upon trial before the judge, judgment was entered declaring the rates and regulations to be unreasonable and unjust as to the defendants in error, which judgment was affirmed by the Court of Civil Appeals.

The contention of the Railroad Commission may be considered under the following propositions: (1) Articles 4565 and 4566 of the Revised Statutes do not authorize an inquiry by the courts into the reasonableness and justness of the rates, rules and regulations made by the commission, except to ascertain if they amount to the taking of property without due process of law. In other words, that such rates, rules and regulations are confiscatory in their effect. (2) It is contended that if the said articles do authorize an inquiry into the reasonableness of rates, etc., except to ascertain whether or not they are in conflict with the Constitution, then such articles of the statute are in violation of the Constitution of the State because they thereby confer legislative power upon the courts. (3) That the facts alleged in plaintiff's petition do not constitute a cause of action under articles 4565 and 4566.

The first question stated above has been decided by this court adversely to the contention of plaintiff in error in the case of Railroad Commission against Houston & Texas Central Railway Co., 90 Texas, 340. In that case the court said: "The language of the law is so antagonistic to the rules established by the decisions, which construction is claimed to have been adopted by the Legislature, that we must conclude that the Legislature intended to change those rules in their application to the subject embraced in the articles quoted, otherwise there was no need for the articles 4565 and 4566. Indeed, the conferring of that jurisdiction upon the courts of itself imposed the duties to try the case by the ordinary rules of procedure, unless otherwise provided." Upon re-examination of the question we are constrained to adhere to our conclusions announced in that case, and to hold that the Legislature intended to confer upon the courts power to determine the question of the reasonableness of rates as they affect the rights of shippers and the railroads by the same rules that would be applied in determining a like question between other parties.

Articles 4565-66 do not confer legislative power upon the courts, but by subjecting the rates to be made by the commission to examination, their reasonableness becomes a judicial question and there is no conflict

between those articles and the provision of the Constitution which provides that "no person or collection of persons being of one of these departments shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." The making of rates by the commission is the exercise of legislative authority which the court can not exercise, but whether the law under which it acts has been complied with is a question for the courts. It is unnecessary for us to inquire what the rule would be in the absence of our statutory provisions.

Articles 4564-65-66, Revised Statutes, read as follows:

"Article 4564. In all actions between private parties and railway companies brought under this law, the rates, charges, orders, rules, regulations and classifications prescribed by said commission before the institution of such action shall be held conclusive, and deemed and accepted to be reasonable, fair and just, and in such respects shall not be controverted therein until finally found otherwise in a direct action brought for that purpose in the manner prescribed by articles 4565 and 4566 of this chapter.

"Article 4565. If any railroad company or other party at interest be dissatisfied with the decision of any rate, classification, rule, charge, order, act or regulation adopted by the commission, such dissatisfied company or party may file a petition setting forth the particular cause or causes of objection to such decision, act, rate, rule, charge, classification or order, or to either or all of them, in a court of competent jurisdiction in Travis County, Texas, against said commission as defendant. Said action shall have precedence over all other causes on the docket of a different nature, and shall be tried and determined as other civil causes in said court.

"Article 4566. In all trials under the foregoing article the burden of proof shall rest upon the plaintiff, who must show by clear and satisfactory evidence that the rates, regulations, orders, classifications, acts or charges complained of are unreasonable and unjust to it or them."

The meaning of the phrase "unreasonable and unjust to it or them," is the question to be solved. An examination of the law as it existed before the creation of the Railroad Commission will aid in the solution of the question. Prior to the enactment of the Commission Law, railroad companies were authorized by statute to make their rates of freight and their rules and regulations, but were limited in their charges to a reasonable sum not to exceed fifty cents per hundred pounds per hundred miles; the charges to be uniform on each class of freight and unjust discrimination was forbidden. The fact that the carrier charged one person a greater sum than was charged to another for "transportation in this State of any freight of the same kind and class in equal or greater quantities for the same or less distance" was made prima facie evidence of unjust discrimination, but the carrier was permitted to rebut this presumption by showing that it was not unjust discrimination. Art. 4258, Sayles' Old Edition of Rev. Stats. It will be observed that the violation

of the law did not consist alone in the discrimination in charges, but depended upon the justness of such discrimination. That statute declared in a negative form what the common law affirmed of the same subject; that is, at common law a carrier was permitted to discriminate in freight rates, provided the circumstances were not such as to make it unjust and unreasonable. Baxendale v. E. C. Railway Co., 93 Eng. Common Law Rep., p. 75; Garton v. B. & E. Railway Co., 101 Eng. Common Law Rep., p. 153; Cowden v. Pacific Coast Steamship Co., 94 Cal., 470, 28 Am. State Rep., 142; Avinger v. South Carolina Railway Co., 29 S. C., 265, 13 Am. State Rep., 716; Johnson v. Pensacola & Perdido Railway Co., 16 Fla., 666; Scofield v. Railway Co., 43 Ohio St., 612; Fitchburg Railway Co. v. Gage, 12 Gray, 398. Under the statute discrimination in rates is prohibited unless it appears not to be unjust and unreasonable. At common law the party complaining was required to show that the discrimination was unjust and unreasonable, while by statute the burden of proof was upon the carrier to establish that it was reasonable and just.

The Railroad Commission Law deprived railroad companies of the power to make rates and conferred that authority upon the commission, which necessarily took from shippers any right of redress against carriers in case the rates were unreasonable, because they are compelled by law to carry at the rate fixed by the commission, and can not be held responsible for excess in charges thus forced upon them. The commission was organized as arbiter between carriers and shippers and for that purpose is invested with very large but not absolute powers. To secure the rights of both carrier and shipper against errors or intentional wrongs which might be committed by the Railroad Commission, articles 4564-65-66 were adopted, which give the railroads a right of action against the commission to set aside such rates as might be prescribed for their government in case they should be unremunerative, giving to the shippers an action against the commission to secure a reduction of such rates in case they be unreasonably high. Being thus clothed with power to adjust the rights of the carrier and shipper and being subjected to judicial control so as to secure such rights, the commission stands in this action in the attitude towards plaintiffs that the railroad company would stand if excessive charges had been collected from the plaintiffs and this suit were for the purpose of recovering the excess of charges paid, hence the same construction should be given in this action to the phrase "unreasonable and unjust to it or them," that would have obtained in a suit to recover from the carrier excess of charges paid.

At common law in a proceeding of this kind the terms "unreasonable and unjust" meant that the rate charged was more than a fair compensation for the services rendered, or that the difference in rates constituted an unjust discrimination against the complainant. In Garton v. Railway Co., above cited, the action was to recover for excessive charges paid by the plaintiffs based upon the proposition that the charge collected was greater than the sum demanded from

another shipper for like service. In the course of the trial Justice Cockburn said: "Suppose the company choose, from some motive of mere favor, to convey the goods for A. B. for nothing, could every person else to whom they made a charge recover it back as money had and received unless there was proof of damage? The amount to which they favor others can make no difference;" and in the same case Justice Crompton remarked, "the charging of another person too little is not charging you too much." An examination of that case will show that it fully sustains the position that the carrier had the right to discriminate between shippers as to the amount of charges, provided it did not amount to unjust discrimination and the charge complained of was not more than a fair compensation for the services performed.

In Cowden v. Pacific Coast Steamship Co., 94 Cal., 470, 28 Am. State Rep., 142, the court made the following quotation from Great Western Railway Company v. Sutton, 4 Eng. and Ir. App., 238: "At common law, a person holding himself out as a common carrier of goods was not under any obligation to treat all customers equally. The obligation which the common law imposed upon him was to accept and carry all goods delivered to him for carriage according to his profession (unless he had some reasonable excuse for not doing so) on being paid a reasonable compensation for so doing; and if the carrier refused to accept such goods, an action lay against him for so refusing; and if the customer, in order to induce the carrier to perform the duty, paid, under protest, a larger sum than was reasonable, he might recover back the surplus beyond what the carrier was entitled to receive, in an action for money had and received, as being money extorted from him. But the fact that the carrier charged others less, though it was evidence to show that the charge was unreasonable, was no more than evidence tending that way. There was nothing in the common law to hinder a carrier from carrying for favored individuals at an unreasonably low rate, or even gratis. All that the law required was, that he should not charge any more than was reasonable."

In Fitchburg Railway Co. v. Gage,, cited above, it was sought to recover from the railroad company the difference between freight charges collected from Gage and others, and charges upon the same class of freight, carried for others between the same points about the same time, the contention being that railroads are common carriers and 'in that relation required to carry merchandise and other goods or chattels of the same class at equal rates for the public and for each individual on whose account service in this line of business is performed." The court answered the contention as follows: "The principle derived from that source (the common law) is very plain and simple. It requires equal justice to all. But the equality which is to be observed in relation to the public and to every individual consists in the restricted right to charge, in each particular case of service, a reasonable compensation, and no more. If the carrier confines himself to this, no wrong can be done, and no cause afforded for complaint. If, for special reasons, in isolated

cases, the carrier sees fit to stipulate for the carriage of goods or merchandise of any class for individuals for a certain time or in certain quantities for less compensation than what is the usual, necessary and reasonable rate, he may undoubtedly do so without thereby entitling all other persons and parties to the same advantage and relief. It could of course made no difference whether such a concession was in relation to articles of the same kind or belonging to the same general class as to risk and cost of transportation. The defendants do not deny that the charge made on them for the transportation of their ice was according to the rates established by the directors of the company, or assert that the compensation claimed is in any degree excessive or unreasonable. Certainly then the charges of the plaintiffs should be considered legal as well as just; nor can the defendants have any real or equitable right to insist upon any abatement or deduction, because for special reasons, which are not known and can not therefore be appreciated, allowances may have been conceded in particular instances, or in reference to a particular series of services, to other parties."

If the rates, rules and regulations complained of in this action had been made by a railroad company before the creation of the commission, and this suit had been instituted against the railroad company to recover damages for discrimination, it could not be maintained, because the facts alleged in the petition do not show that there was any discrimination against the plaintiffs in the rates charged and collected from them. The comparison is made by plaintiffs between cotton compressed to a density of forty pounds and more to the solid foot and cotton not so compressed, and it is claimed that, because the railroad company derives more profit from a carload of the one than the other, there is discrimination against the shipments of cotton compressed by the method represented by plaintiffs. The same rate is charged per hundred weight for all cotton, and the plaintiff's case rests wholly upon the proposition that they have the right to compel the Railroad Commission to make a rate by the carload instead of by the one hundred pounds, or to give lower rates on cotton in round bales. There is no rule of the common law nor provision of the statute which requires the carrier or the commission to make rates based upon carload lots, nor is there any precedent or principle by which the reasonableness of a rate (as it affects individual shippers) made by carriers or by the commission can be determined by a comparison of the profits derived from the shipment of different classes of freight.

Article 4562, Revised Statutes, prescribes the duty of the commission in making rates in this language:

"Article 4562. The power and authority is hereby vested in the Railroad Commission of Texas, and it is hereby made its duty, to adopt all necessary rates, charges and regulations to govern and regulate railroad freight and passenger tariffs, the power to correct abuses and to prevent unjust discrimination and extortion in rates of freight and passenger tariffs on the different railroads in this State, and to enforce the same

by having the penalties inflicted as by this chapter prescribed through proper courts having jurisdiction.

"1. The said commission shall have power, and it shall be its duty, to fairly and justly classify and subdivide all freight and property of whatsoever character that may be transported over the railroads of this State into such general and special classes or subdivisions as may be found necessary and expedient.

"2. The commission shall have power, and it shall be its duty, to fix to each class or subdivision of freight a reasonable rate for each railroad subject to this chapter for the transportation of each of said classes and subdivisions."

The performance of these duties requires that classification be made so as to secure equality as near as may be in the carriage of similar articles, and each shipper is entitled to have his property carried for a reasonable compensation for the service rendered to him. In making the classification and rates of charges, the railroad companies must also be protected in their right to have a fair return from their business; but in determining this question the Railroad Commission must have in view the entire business operations of the railroads. A marked difference between the right of the shipper and the carrier in determining the reasonableness of rates consists in this: when considered from the shipper's standpoint, it must be reasonable as to the particular property carried; that is, the charge must not be more than a fair compensation for the services rendered to the shipper in the carriage of the particular property; when, however, the commission considers the reasonableness of rates from the standpoint of the railroads, it is not confined to the particular article, but must look to the whole business of the railroads, which are required to carry many articles at a loss, as a single transaction, which must be made up by levying higher rates upon such articles as can bear it within the limit of reasonable compensation. The rate and classification must be so arranged as to give a result of just and reasonable compensation on the entire business of the railroad company, but the rate on each article need not be reasonable if considered alone; but the aggregate must, however, produce a reasonable return. The work of the commission, as prescribed by the article last copied, involves a comprehensive knowledge by the commission of the business transactions of railroads and of the various business interests of the people, so that by a just exercise of their ample powers the citizen may be guarded against extortions and unjust discrimination and the railroads be allowed a fair return for the services rendered to the public. To everyone who is charged with the distribution of taxes upon property and pursuits, the serious question is presented: how much can be levied upon each class of property or each occupation and which is best able to bear the burden that is necessary for the support of the government? A like but more complicated question presents itself to the Railroad Commission or railroad company in the fixing of rates and making

classifications.  Public interest must be consulted in the regulation · of these matters so as to give support to weak enterprises and not to exclude from market many things which would not bear transportation if the charges were based upon absolute equality.  The superficial view of the subject which we are able to take with our limited knowledge makes it manifest that discrimination in rates is often necessary to uphold justice and to promote the public good, and such discrimination is not unjust to him who gets in service the equivalent of what he pays.

The plaintiffs do not complain that the rates charged against them are either unjust or unreasonable.  They claim simply that the Railroad Commission has failed to give them an advantage over their competitors which is unjust to them because it deprives them of a benefit that they would derive from the control of improved machinery, and because it gives to the railroad company more profit on a carload of cotton prepared by their method than upon other cotton.  But a complete answer to this proposition is, that in the transportation of a carload of cotton composed of round bales the shipper receives the service of carrying nearly twice as much cotton as can be carried upon a car of flat bale cotton.  The profits which are made by railroad companies are greater to the carload, but the carload is of greater value and weight than the other and the liability of the railroad company is proportionally increased.  Plaintiffs can as well complain of lower rates given upon other articles, for instance, upon wheat, oats and corn, neither of which would bear a charge equal to that placed upon cotton, either by the carload or by the hundred pounds: in truth, if such a rule was adopted as that proposed by the plaintiffs in this case, the commission's work could not possibly be sustained in any court, for it might, by comparison between rates on different articles and by showing a difference in profits derived from the transportation of one over the other, destroy any schedule of rates that could be prepared.  The process that the plaintiffs would inaugurate to test the reasonableness of a rate is such as the Railroad Commission might adopt for the purpose of making proper distribution of rates.  It is applicable strictly to rate making, and is therefore legislative in its character; it is not appropriate to the work of testing the reasonableness or justice of a prescribed rate, therefore is not judicial.  Courts are limited in their review of the work of the commission by the terms of the statute and can not go into an investigation of the methods by which the commission arrived at its conclusions.

We have found no case like this, because there is not within the range of our researches any trace of a statute like that under which this proceeding was instituted.  The cases of Garton v. Railway Company, 101 Com. L. R., 153, and Fitchburg Railway Company v. Gage, and others, 12 Gray, 398, which we have cited, are analogous in some respects and announce principles which condemn the contention of the defendants in error.  We repeat the following part of the quotation before made from the latter case:  "But the equality which is to be observed in relation to the public and to every individual consists in the restricted right

to charge in each particular case of service a reasonable compensation and no more. If the carrier confines himself to this, no wrong can be done and no cause afforded for complaint." Certainly the commission has, under the laws of this State, no less authority than the railroad corporations had before the commission was created. According to the allegations of the petition of defendants in error, the commission has, in conformity to the principles announced in the cases cited, "confined itself to a rate not unreasonable for the services rendered" in the transportation of all classes of cotton.

The defendants in error disclose their purpose by that which they ask the court to do; that is, to fix a rate upon cotton in round bales lower than the rate which has been fixed by the commission upon cotton of all classes : in other words, they ask that the rate of charges upon the cotton in which they are interested shall be sufficiently below the general rate to enable them to avail themselves of the advantage their improved machinery would give them under such circumstances. The effect of such action would be to give them such advantage over their competitors in the purchase and sale of cotton that it would tend very decidedly to creating in their favor a monopoly of the cotton business. Their allegations are sufficient to show that the machinery they claim to be interested in is being operated in different parts of the State, and with the discrimination which they seek would enable them to cover in a large measure the cotton producing territory of Texas and to control the bulk of the crop. To make such difference in the rates upon cotton in flat bales and that in round bales would manifestly be unjust discrimination, and it was proper for the commission, in making rates, to bear in mind that the probable effect would be the creation of a monopoly to the detriment of the public. The owners of improved machinery have a right to all the benefits of its superiority over the old machinery for ginning and baling cotton that comes from the use of the machinery itself, but they have no right to ask the government to bend its policy to their aid in this respect to the injury of the citizenship of the State.

We are of opinion that the facts alleged in the petition do not tend to show any right of action in the defendants in error as against the Railroad Commission, and that the court below erred in not sustaining the general demurrer to the petition. The allegations of the petition and the facts proved show that no better case can be made by an amendment of the petition, hence it would be useless to send this case back to the District Court for further proceedings. It is therefore ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed, and that the general demurrer of the Railroad Commission to the petition of the defendants in error be and the same is hereby sustained, that this case be dismissed, and that the defendants in error pay all cost.

*Reversed and dismissed.*