## CITY OF HOUSTON, Appellant,

v.

## MEMORIAL BEND UTILITY COMPANY, Appellee.

No. 13555.

Court of Civil Appeals of Texas.

Houston.

Jan. 21, 1960.

R. H. Burks, City Atty., John Gano, Senior Asst. City Atty., Charles F. Weaver, Asst. City Atty., Houston, for appellant.

Dow & Dow, Melvin A. Dow, Houston (Howard W. Edmunds, Houston, of counsel), for appellee.

BELL, Chief Justice.

The appellee is a private utility furnishing water and sanitary sewer service to residents of a defined area in the City of Houston. Prior to December 31, 1956, the territory served was outside the limits of the City. As a result of annexation, a part of the area served by appellee bcame a part of the City of Houston. At the time of annexation appellee was charging rates for services rendered by it according to a rate schedule promulgated by it. These rates it continued to charge until it raised its rates effective July 1, 1959.

On January 2, 1957, the City Council of the City of Houston passed general ordinances Nos. 57–1 and 57–3, by which it, without notice to appellee, fixed the rates that might be charged by a utility situated as was appellee for water and sanitary sewer service. The rates so fixed were less than the rates prescribed by appellee's schedule of rates. The record here reflects that on February 18, 1957, appellee furnished the City information as to the value of its properties, the appraisal being made by Freese, Nichols and Turner, the report being dated February 15, 1957. Also it furnished a statement of its income and expenses for the fiscal year ending November 30, 1956. The furnishing of these statements was in an effort to comply with the above ordinances. At the same time appellee for various reasons protested the passage of the ordinances and questioned their validity and the rates fixed thereby. The petition to the City Council contains this prayer:

"Wherefore, premises considered, petitioner prays that the City Council of the City of Houston *pass an ordinance approving the rates and charges made by the petitioner in the operation of its utilities and in the furnishing of other public services* (emphasis ours) or in the alternative that said City Council conduct a public hearing concerning rates and charges made by the petitioner and at such hearing that said petitioner be given an opportunity to introduce evidence with reference thereto *and further, that the rates and charges made by petitioner be not changed* until the City of Houston has taken final action after such hearing." (Emphasis ours.)

On May 1, 1957, the City Council passed ordinance No. 57–531 by which it provided that a private utility operating without a franchise could charge no greater rate for its service than was being charged by it on December 31, 1956. The effect of the ordinance was to fix the maximum rate that could be charged, such maximum rate being that being charged by the utility on December 31, 1956. Appellee had no notice of the passage of the ordinance before its passage. On the same day ordinances Nos. 57–1 and 57–3 were repealed.

The facts here show that the rates being charged by appellee on May 1, 1957 were the same as those being charged by them on December 31, 1956.

Nothing was done by appellee until June 3, 1959. It continued to charge the rates it had voluntarily adopted and which it, by its petition of February 18, 1957, expressly asked the City Council to adopt and which the City Council did effectively adopt by ordinance No. 57–531. On June 3, appellee wrote the City Council contending it had on February 18, 1957 asked for a rate hearing and stating the rates in force were not compensatory and stating it did not intend to continue to operate under the existing rates.

They requested a rate hearing. Mr. Puig, the Company president, stated appellee had several times from early 1957 orally requested a rate hearing. Just what kind of a rate hearing he does not state, nor are the times of the requests stated. On June 9, 1959, the City Council set a rate hearing for July 23, 1959.

Appellee, without approval of the City Council, promulgated an increase in rates to be charged by it effective July 1, 1959, and is now charging such rates.

Appellant filed this suit to enjoin appellee from charging rates in excess of those fixed by ordinance No. 57–531. The trial court refused to grant the injunction.

■ Appellee contends the ordinance is as to it invalid because it was given no notice or hearing in connection with the ordinance fixing its rates and it was thus denied procedural due process. Too, it contends the rates established are not compensatory, but operate to confiscate its property. Further, it says the ordinance recites facts which are contrary to the established fact, that is, that since December 31, 1956, there has been no increase in prices and expenses, whereas certainly there has been a very substantial increase in taxes. Appellee says that in any event under all circumstances the trial court did not abuse its discretion in refusing to grant the injunction.

■■ We have reached the conclusion that ordinance No. 57–531 was as to appellee valid and effective to fix the maximum rates which appellee could charge for its services. We take it to be established law that until such time as a regulatory body assumes to exercise its authority to fix rates which a utility may charge, that the utility may fix its own rates, provided they are reasonable. 73 C.J.S. Public Utilities §§ 14 and 15, p. 1009. Such rates would be binding until such time as the regulatory body assumes to exercise its authority. United Gas Corp. v. Shepherd Laundries, 144 Tex. 164, 189 S.W.2d 485. As we held on January 14, 1960, in the case of the City of Houston v. Willow Bend Utilities, Inc., Tex.Civ.App., 331 S.W.2d 333, in case the regulatory body proposes to fix the rates to be charged by the utility due process of law requires that the utility be given notice and be given a hearing, unless the utility in some manner consents to the fixing of the particular rates which the regulatory body in fact fixes. We think there can be no question that if the utility consents to an order by the regulatory body fixing particular rates, no notice of the passage of the order need be given and no hearing need be accorded the utility. In such case the rate is that of the utility and the regulatory body. It would be a rate fixed by the regulatory body with the consent of the utility.

In this case, on February 18, 1957, appellee expressly requested the City Council of the City of Houston to pass an ordinance approving the rates and charges being made by appellee. There was an alternative prayer for a rate hearing, but it was for a hearing to examine the rates appellee was charging and in this connection it was expressly asked that the rates appellee was charging *be not changed until after a hearing*. On May 1, 1957, with the enactment of Ordinance No. 57–531, the City Council did just what appellee had expressly requested. It adopted the rates the appellee was charging. After the request by appellee that an ordinance approving these rates be passed, appellee was entitled to no notice that the Council would do as appellee had requested.

■■ When the ordinance was passed, the rate fixed became the rate promulgated by law and it could not be changed except in a manner provided by law. The utility could not itself promulgate new rates until the existing rates fixed by law be set aside. The only way the rates could be changed would be through a hearing before the City Council. The courts could not intervene until appellee first exhausted its remedy before the City Council. San Antonio Transit Company v. City of San Antonio, Tex.Civ. App., 323 S.W.2d 272, no writ hist. Of

course, if the Council should deny a hearing and seek to continue to enforce an ordinance that appellee contends operates to contends operates to confiscate its property, the courts would intervene to determine whether there was in fact confiscation. Oklahoma Operating Company v. Love, 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596. In the case before us, a hearing was set to commence July 23, 1959. There has been no denial of a hearing. We do not mean to say that even though appellee consented to the adoption of a rate that it would be estopped to assert the rate was confiscatory in a suit filed within the time prescribed by law after the passage of the ordinance adopting the rates. We merely hold procedural due process has not been denied and that the ordinance not having been contested in court for over two years after it became effective on the ground that the rates established were noncompensatory, appellee cannot change its rates except with the approval of the City Council. San Antonio Transit Co. v. City of San Antonio, supra. Of course, even should the City Council not expressly deny a hearing but should delay or prolong the hearing so its action would be tantamount to a denial of a hearing, the courts could intervene upon proper proceedings being instituted. We have no such situation here.

■ Appellee contends continued enforcement of the rates would confiscate its property. What we have said above we think should adequately dispose of such contention. However, without going into the matter extensively, it should suffice to say that the proof shows that if revenue from tap charges is included as income, then for the years ending November, 1958, and May 31, 1959, appellee would show a profit. Appellee argues that since tap charges are nonrecurring, the revenue derived from this service may not be considered in determining profit. It is true that nonrecurring revenue may not be considered in fixing a rate operative in the future. However, it seems to us but reasonable to consider such in a situation such as we have

here where appellee is contending it should not be enjoined from raising rates fixed by ordinance because it has been operating at a loss. Certainly it has been income for the period material to our inquiry. In determining what the future rate should be you have an entirely different problem.

■ We are not unaware that the inquiry of this court in a temporary injunction proceeding is whether the trial court has abused its discretion. However, we understand the law to be that where the facts conclusively show a party is violating the substantive law it becomes the duty of the court to enjoin the violation. In such case there is no discretion to be exercised. It must correctly apply the law to positively established fact. General Drivers, Warehousemen & Helpers, Local 745, et al. v. Dallas County Construction Employers Ass'n, Tex.Civ.App., 246 S.W.2d 677, writ ref., n. r. e.; Southland Life Ins. Co. v. Egan, 126 Tex. 160, 86 S.W.2d 722.

■ Too, it is the office of a temporary injunction to preserve the status quo. The status quo to be preserved is the last actual, peaceful, noncontested status of the parties to the controversy, which preceded the suit and which should be preserved until a final determination of the matters in controversy. Transport Company of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549. The last actual, peaceful and noncontested status of the parties to this suit was the status created by ordinance No. 57–531 adopting rates voluntarily used by appellee which appellee requested the Council to adopt, and the ordinance adopting them was not contested as fixing confiscatory rates until two years after it became effective.

The judgment of the trial court is reversed and judgment is here rendered enjoining appellee, pending a trial on the merits, from charging its customers rates in excess of those being charged by it on May 1, 1957.