**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

**v.**

**STATE of Texas, Appellee.**

No. 12301.

Court of Civil Appeals of Texas, Austin.

May 14, 1975.

Will Sears, Sears and Burns, Houston, for appellant.

John L. Hill, Atty. Gen., John W. Odam, Jr., Asst. Atty. Gen., Mike Willatt, Stockton, Fisher & Willatt, Austin, for appellee.

PER CURIAM:

This is an appeal from the order of the district court of Travis County which temporarily enjoined appellant, Southwestern Bell Telephone Company, from increasing the intrastate long distance telephone rates

·charged to its Texas customers. Appellee is the State of Texas. We will reverse the judgment of the district court and here render judgment dissolving the temporary injunction.

The Attorney General of Texas filed the suit in the name of the State of Texas "on behalf of its agencies, departments and citizens." In its petition appellee alleged that the telephone company announced that it would "restructure" its rates on long distance intrastate telephone calls with a resulting increase in revenues to the company of about forty-five million dollars. By way of relief appellee prayed that the telephone company be temporarily restrained from increasing the intrastate long distance rates charged to its Texas customers; that after notice and hearing the district court enter a temporary injunction likewise enjoining the increase of those rates; that the court appoint a Master in Chancery "to perform those duties as may be required of him by the Court;" and that upon final hearing the court enter a permanent injunction enjoining the telephone company from increasing those said rates.

The appellee pleaded that Southwestern Bell provides service to most of Texas. Appellee declared that the company's interstate long distance rates are regulated by the Federal Communications Commission, and that in incorporated cities and towns in Texas the company's local rates are regulated by the governing bodies of those municipalities. Appellee asserted further that the telephone company's long distance intrastate rates are not regulated directly by any governing body, but instead that the company " . . . is permitted to set its own rates so long as they [those rates] are just and reasonable."

As authority for the filing of the suit, appellee averred that the proposed increase in rates was a toll "not authorized by law," Vernon's Ann.Tex.St.Const. Art. IV, § 22; and that the proposed increase in rates was in violation of Vernon's Ann.Tex.Rev.Civ.

Stat.Ann. Art. 1125, in that the increase was "excessive and unreasonable." It was alleged in addition that appellee, its agencies and its citizens would be "adversely affected by" the increased rate because the rate increase was an "unconscionable action or course of action" by the company in violation of Tex.Bus. & Comm.Code Ann., § 17.50(a)(3), V.T.C.A., and finally, that the proposed increase would be "in violation of the public policy and against the public interest of the State of Texas."

The district court entered a temporary restraining order without notice, and upon notice and hearing, the court entered the temporary injunction order which is the subject of this appeal. That order provided that the company be " . . . temporarily restrained pending hearing hereon from increasing the intrastate long distance rates charged to its Texas customers . . . ."

The telephone company assails the judgment by five points of error: (1) the trial court had no jurisdiction to hear and determine the suit as it could not constitutionally fix and determine the rate of any public utility; (2) the Attorney General of Texas had no power to file the lawsuit, and in consequence, the district court had no jurisdiction to hear and determine the suit; (3) the temporary injunction should be dissolved because appellee's pleadings were "grossly insufficient" to support its entry; (4) the order granting the temporary injunction violated the requirements of Texas Rules of Civil Procedure, rule 683 in that it failed to state the reasons why the injunction was necessary to prevent injury; and (5) the appellee's proof failed to support the entry of the temporary injunction.

Because we reverse the judgment upon the basis of the telephone company's first contention, it will be unnecessary to treat the other contentions.

■ Tex.Const. Art. II, § 1, provides that the powers of government shall be divided into three distinct departments: legislative, executive, and judicial; and except in instances expressly permitted therein, no person or collection of persons, being one of these departments, shall exercise any power properly attached to either of the others. By authority of Art. II, § 1, legislative acts requiring the exercise by the judiciary of legislative functions are unconstitutional. Daniel v. Tyrrell & Garth Inv. Co., 127 Tex. 213, 93 S.W.2d 372 (1936). Likewise, it is settled that a function of government which the legislature cannot delegate directly to the judiciary cannot be conferred indirectly. Key Western Life Ins. Co. v. State Board of Insurance, 163 Tex. 11, 350 S.W.2d 839 (1961); Texas Vending Comm. v. Headquarters Corp., 505 S.W.2d 402 (Tex.Civ.App.1974, writ ref'd n. r. e.).

■ Rate-making is a legislative power which the judiciary cannot exercise. Railroad Commission v. Weld & Neville, 96 Tex. 394, 73 S.W. 529 (1903); Daniel v. Tyrrell & Garth Inv. Co., *supra;* Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681 (1941); City of Houston v. Southwestern Bell Telephone Company, 263 S.W.2d 169 (Tex.Civ.App.1953, writ ref'd). The legislature, however, may delegate the rate-making power to governmental agencies, or to municipal corporations with respect to utilities operating within the boundaries of such municipalities. Kousal v. Texas Power & Light Company, 142 Tex. 451, 179 S.W.2d 283 (1944).

■ Appellee does not question the premise that rate-making is a legislative power which the judiciary cannot exercise. Appellee acknowledges, and in fact pleads, that the telephone company's long distance intrastate rates are not regulated by any governing body. In the absence of regulation, appellee recognizes that the telephone company may set its own rates. But appellee's position is that the company's right to set its own rates is limited by "the common law requirement" that the rates be "reason-

able" in amount, and that, accordingly, the district court has jurisdiction to enjoin unreasonable rates.[1]

The appellee argues that the district court was not asked to set the rates that the telephone company might charge for intrastate long distance calls, but instead that the district court was asked to determine that the proposed increase in those rates be enjoined because the increase was unreasonably high. The process envisaged by appellee is that, if upon final hearing, the district court concludes that the proposed increase is unreasonably high, "the rates will then be sent back to the Appellant [telephone company], and the Appellant will have the responsibility to set rates that are not unreasonably high." Thereafter, if no one complains, the dispute will be ended. If, however, someone complains that the new rates are still unreasonably high, the same procedural process will be repeated. In the alternative, the appellee states that if the district court determines that the present rates are the maximum reasonably allowed, then that court should permanently enjoin the company from increasing the present rates.

An examination of the order of the court and appellee's argument concerning the relief sought from the district court demonstrates that the district court's order set the company's present schedule of rates as the lawful one. Appellee claims that the court did not set a rate, but rather the court enjoined the company from increasing the present rate because the increased rate was unreasonably high. It occurs to us that before the district court may determine that a rate is "unreasonably high," it must necessarily determine what is "reasonably high." In arriving at what is a "reasonable rate" the court would have to consider the same class of evidence and observe the same rules as an agency legislatively empowered to set rates. In that connection, the Attorney General suggests in a supplemental brief that the district court, in passing upon the reasonableness of the proposed rate increase, considered the "three essential factors" stated in Railroad Commission v. Houston Natural Gas Corp., 155 Tex. 502, 289 S.W.2d 559 (1956): (1) the reasonable operating expenses of the utility; (2) the present fair value of the property used and useful by the utility in the public service; and (3) a reasonable net rate of return.

In our view, the district court's order was a determination, in effect, that the existing rate was adequate, and the order fixed that rate to be the future one, all of which was tantamount to judicial ratemaking, a procedure not permitted by Tex.Const. Art. II, § 1. Daniel v. Tyrrell & Garth Inv. Co., *supra*.

We have examined the cases relied upon by the Attorney General and contained in

---

1. As authority for the proposition that the district court has jurisdiction to enjoin a rate set by a utility upon the basis that it is "unreasonable," the Attorney General relies upon: City of Houston v. Memorial Bend Utility Co., 331 S.W.2d 418 (Tex.Civ.App. 1960, writ ref'd n. r. e.) ; United Gas Corp. v. Shepherd Laundries Co., 144 Tex. 164, 189 S.W.2d 485 (1945) ; Hatten v. City of Houston, 373 S.W.2d 525 (Tex.Civ.App.1963, writ ref'd n. r. e.) ; City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622 (1952) ; Railroad Commission v. Weld & Neville, 96 Tex. 394, 73 S.W. 529 (1903) ; Cock v. Marshall Gas Co., 226 S.W. 464 (Tex.Civ.App.1920, no writ) ; City of Carrollton v. Southwestern States Telephone Company, 381 S.W.2d 401 (Tex.Civ.App.1964, writ ref'd n. r. e.) ; General Telephone Company of Southwest v. Cities Littlefield et al., 498 S.W.2d 375 (Tex. Civ.App.1973, writ ref'd n. r. e.) ; Southwestern Bell Telephone Company v. Houston Independent School District, 397 S.W.2d 419 (Tex.1965) ; City of Nassau Bay v. Nassau Bay Telephone Company, Inc., 517 S.W.2d 613 (Tex.Civ.App.1974, writ ref'd n. r. e.) ; Fink v. City of Clarendon, 282 S.W. 912 (Tex.Civ.App.1926, no writ) ; Daniel v. Tyrrell & Garth Inv. Co., 127 Tex. 213, 93 S.W. 2d 372 (1936) ; City of Baytown v. General Telephone Company of Southwest, 256 S.W. 2d 187 (Tex.Civ.App.1953, writ ref'd n. r. e.) ; Texas Gas Utilities Company v. City of Uvalde, 77 S.W.2d 750 (Tex.Civ.App.1934, no writ) ; Schenker v. City of San Antonio, 369 S.W.2d 626 (Tex.Civ.App.1963, writ ref'd n. r. e.).

the footnote. In our judgment none of those cases *holds* that the district court has jurisdiction to enjoin a rate set by a utility upon the basis that it is unreasonably high. United Gas Corp. v. Shepherd Laundries Co., 144 Tex. 164, 189 S.W.2d 485 (1945); City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622 (1952), and Cock v. Marshall Gas Co., 226 S.W. 464 (Tex.Civ. App.1920, no writ), are discrimination cases. In City of Texarkana v. Wiggins, the Supreme Court specifically stated that it was not passing on the question of whether the rates charged by the petitioner, whether within or without its corporate limits, were required to be "reasonable." In Railroad Commission v. Weld & Neville, *supra,* the Supreme Court likewise observed that the parties appealing did not complain that the rates charged against them are either unjust or unreasonable.

It is true that in some of those cases there is general language, not necessary to the holdings therein, which could suggest the result argued for by appellee. For example, in City of Houston v. Memorial Bend Utility Company, 331 S.W.2d 418, 421 (Tex.Civ.App.1960, writ ref'd n. r. e.), Justice Bell wrote, "We take it to be established law that until such time as a regulatory body assumes to exercise its authority to fix rates which a utility may charge, that the utility may fix its own rates, *provided they are reasonable.*" (Emphasis added) The holding of that case is that if a utility consents to a rate ordinance by the city council, no notice of the passage of the ordinance fixing the rates need be given and no hearing need be given the utility. After the council's ordinance has been adopted, the utility could not itself promulgate an increase in the rate until the existing rates were set aside. The matter of the reasonableness *vel non* of a rate fixed by the utility was not there involved.

There are two early cases which invalidated attempts by district courts to engage in rate-making. The order of the district court of Brown County, attempting to fix a gas rate by injunction was reversed by this Court in Community Natural Gas Co.

v. Natural Gas & Fuel Co., 34 S.W.2d 900 (Tex.Civ.App.1930, no writ), and this Court dismissed the cause for want of jurisdiction in the trial court. This Court held that rate-making is a legislative, not a judicial, function. In Texas Gas Utilities Co. v. City of Uvalde, 77 S.W.2d 750 (Tex.Civ.App.1934, no writ), a gas company in receivership applied through the receiver to the district court for authority to charge gas rates higher than those rates set by the Uvalde city council. The district court entered an order purporting to grant that authority. The appellate court held that district court's order was a nullity because the setting of gas rates was the exercise of legislative power.

We are aware of the existing view that there is a compelling need in Texas for state-wide regulation of utility rates, including intrastate telephone rates. That thinking is reflected by several bills presently pending in the legislature to effectuate some character of state-wide regulation. The final determination of what form of state-wide utility rate regulation there will be, if any, is a matter necessarily within the legislative prerogative.

■ The legislature has not elected to regulate intrastate telephone rates in Texas. We are of the opinion that Tex.Const. Art. II, § 1, prohibits the relief which appellee sought. Accordingly, we observe the well established precept that wherein the law provides no remedy, the judiciary cannot create one. Ex Parte Hughes, 133 Tex. 505, 129 S.W.2d 270 (1939). Regarding this precept, the Supreme Court has more recently stated that deficiencies in the law " . . . will not justify a court's excursion beyond its proper sphere in order to plug a hole or cure a supposed defect in the legislative scheme of things." State v. Reyna, 160 Tex. 404, 333 S.W.2d 832 (1960).

The judgment is reversed and judgment is here rendered dissolving the temporary injunction.

Reversed and rendered.