GULF, COLORADO & SANTA FE RAILWAY COMPANY v. RAILROAD COMMISSION OF TEXAS.

No. 1876.   Decided December 2, 1908, March 10, 1909.

**1.—Railroad Commission—Attacking Freight Rates of.**

Under articles 4565, 4566, Revised Statutes, a railway company dissatisfied with the rates, etc., fixed by the Railroad Commission may attack any number or all of the rates prescribed, and it is not necessary, in order to show the unreasonableness of one rate attacked to prove that the operation of the road under all the prescribed rates will not produce just compensation for the services. (Pp. 351–353.)

ON REHEARING.

**2.—Same—Reasonableness of Rates.**

It is not necessary, under articles 4565, 4566, Revised Statutes, to show that the freight rate attacked was confiscatory. Except as to the conclusive nature of the proof required, the question of its reasonableness will be determined as in any other class of suits. (P. 353.)

**3.—Same—Pleading.**

Though public carriers must, of necessity, carry many unimportant things at rates which would not compensate them for the service, a petition in an action attacking freight rates on an important article of commerce, such as lumber, which shows that the rate fixed by the Railroad Commission does not yield sufficient revenue to pay for the cost of transporting it, not including interest on investment, taxes, and other expenses, discloses facts making the rate unreasonable. (Pp. 341–354.)

Question certified from the Court of Civil Appeals for the Third District, in an appeal from Travis County.

*Terry, Cavin & Mills*, for appellant.—The allegations of the appellants show that the rates prescribed by the Railroad Commission, from any and every possible standpoint, are unreasonable and unjust. Canada Southern Ry. Co. v. International Bridge Co., Law Reports, 8 App. Cases, 723, 731; Rickett, Smith & Co. et al. v. Midland Ry. Co., 9 Railway and Canal Traffic Cases, 107; Louisville, E. & St. L. Ry. v. Wilson, 119 Ind. 352–358; Thomas v. Frankfort & C. Ry. Co., 76 S. W., 1093; Cole v. Goodwin, 19 Wendell, 251; Thayer v. Burchard, 99 Mass., 519; 4 Elliott on Railroads, secs. 1560, 1561, 1563; Kellerman v. Kansas City, St. J. & C. B. R. R., 34 S. W., 41, 43; Interstate Com. Com's'n v. Louisville & N. R. R. Co., 73 Fed., 410; Interstate Com. Com's'n v. Southern Ry. Co., 117 Fed., 741; 122 Fed., 800.

A railway company can not be required to carry any particular traffic or class of traffic at a loss, but is entitled to some reasonable compensation above the actual cost of transportation on all freight

which it is required to handle. Any rates which, if enforced, would require a railway company to carry traffic at a loss or without some compensation above the actual cost of carriage, would deprive it of its property pro tanto, contrary to section 19 of article 1 of the Constitution of the State of Texas, which provides that no citizen shall be deprived of property, privileges or immunities except by due course of the law of the land, and to section 1, article 14 of the amendments to the Constitution of the United States, which provides that no State shall deprive any person of property without due process of law or deny to any person the equal protection of the law. Atchison, T. & S. F. Ry. Co. v. Campbell, 61 Kan., 439; Lake Shore & Mich. So. Ry. v. Smith, 173 U. S., 684; Commonwealth of Virginia v. Atlantic Coast Line Ry. Co., 7 L. R. A. (N. S.), 1086; Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S., 418; State v. Minneapolis & St. L. Ry. Co., 83 N. W., 60 (Minn.); Minneapolis & St. L. Ry. Co. v. Minnesota, 186 U. S., 257.

The Legislature of the State of Texas having failed to define by statute what is a reasonable rate, resort must be had by the Railroad Commission of Texas and by the courts in reviewing the action of the Commission, to the common law, to determine what is a reasonable rate, and at common law the carrier was entitled to a reasonable compensation above the actual cost of carriage for the transportation of each article of freight. Interstate Commerce Com's'n v. Baltimore & O. Ry. Co., 43 Fed. Rep., 42, 145 U. S., 275; American Railroad Rates, Noyes, p. 32; Cotting v. Kansas City Stock Yards Co., 183 U. S., 95, 96.

The Legislature of Texas could not confer on the Railroad Commission the unbridled power to fix rates according to their whims and caprices and without review by the courts. If such power could be exercised at all, it could only be exercised by the Legislature, for its delegation to a commission would be conferring upon the latter strictly legislative powers. State v. Great Northern R. R. Co., 100 Minn., 445; Schaezlein v. Cabaniss, 67 Pac., 755; Matthews v. Murphy, 63 S. W., 785; Louisville & N. R. R. Co. v. Rld. Commissioners, 16 Am. & Eng. R. R. Cases, 16; Louisville & N. R. R. Co. v. Commonwealth, 99 Ky., 32; Tillman v. Cocke, 9 Baxter (Tenn.), 429; State v. Cincinnati Gas, Light & Coke Co., 18 Ohio St., 262; Yick Wo v. Hopkins, 118 U. S., 356; Anderson v. Manchester Fire Assurance Co., 59 Minn., 182; O'Neil v. American Fire Ins. Co., 166 Pa. St., 72; Dowling v. Lancashire Ins. Co., 92 Wis., 63.

The Constitution and laws of Texas having conferred on appellants the valuable franchise of exacting tolls or compensation for services as common carriers, such franchise can only be regulated by the State to the extent of requiring such tolls to be reasonable, and if any attempted action of the State or any agency of the State goes beyond that, same is void. Atchison, T. & S. F. Ry. Co. v. Campbell, 61 Kansas, 439; Brunswick & T. Water District v. Maine Water Co., 59 Atl., 537; Lake Shore & M. S. Ry. Co. v. Smith, 173 U. S., 698.

The Railroad Commission of Texas is required by the law under which it acts to prescribe reasonable rates, and when it acts beyond the scope of its authority by prescribing unreasonable rates, such

action is unauthorized and void. Revised Statutes of Texas, arts. 4562 to 4566.

The enforcement of a particular rate which would yield to the carrier less or no more than the cost of transportation, and no compensation, would violate the Constitutions, State and Federal. Atchison, T. & S. F. Ry. Co. v. Kansas, 61 Kansas, 439; Lake Shore & M. S. Ry. Co. v. Smith, 173 U. S., 684; Commonwealth v. Atlantic Coast Line R. R. Co., 55 S. E., 572; State v. Minneapolis & St. L. R. R. Co., 83 N. W., 60; s. c. 186 U. S., 257; St. Louis & S. F. Ry. Co. v. Gill, 156 U. S., 649; Atlantic Coast Line R. R. Co. v. North Carolina Corp. Com., 206 U. S., 1.

*Robert V. Davidson,* Attorney-General; *Claude Pollard,* Assistant, and *Andrews, Ball & Streetman,* for appellee.—The continuance ·of a given rate is not conclusive evidence of the reasonableness of that rate; but when a railway company advances a rate which has been for some time in force, the fact of its continuance by the railway company prior to the advance is in the nature of an admission against that company, which tends to show the unreasonableness of the advance and the reasonableness of the rate prior to the advance. Holmes v. Savannah Ry. Co., 8 I. C. C. Rep., 568; Central Yellow Pine Association v. Illinois C. Ry. Co., 10 I. C. C. Rep., 505.

If proportion of rate received by one road is too small, the injury can not be remedied by an advance of rates to the public. Central Yellow Pine Association v. Ill. C. Ry. Co., 10 I. C. C. Rep., 542.

Rates on lumber should be low, because: (a) It is inexpensive freight; (b) The business is constant; (c) It requires no special equipment; (d) It is loaded by shipper and unloaded by consignee; (e) The risk is small. Central Yellow Pine Association v. Illinois C. Ry. Co., 10 I. C. C. Rep., 547.

The reports and findings of the Railroad Commission are in all judicial proceedings deemed prima facie evidence as to every fact found, and orders and regulations of the commission are deemed prima facie reasonable and just, and the burden of proof is upon the railroad company to show to the contrary. Railroad Commission of ·Texas v. Houston & T. C. Ry. Co., 90 Texas, 340; State v. Jacksonville Terminal Co., 41 Fla., 363; Jacobson v. Wisconsin, M. & P. R. R. Co., 70 Am. St. Rep., 358; State v. Fremont, E. & M. V. R. R. Co., 22 Neb., 313; Brabham v. Atlantic C. L. R. R. Co., 11 I. C. C. Rep., 464.

Any comparison of rates must be predicated upon similarity of conditions, and rates in different sections of the country and in different directions can not be compared for the purpose of showing the unreasonableness of any particular rate. Storrs v. Pensacola & A. R. R. Co., 29 Fla., 631; Hooper v. Chicago, Milwaukee & St. Paul Ry., 91 Iowa, 639; Interstate Com. Com. v. Louisville & N. Ry., 118 Fed., 613; Evans v. Union Pac. Ry. Co., 6 I. C. C. Rep., 520; Morrel v. Union Pac. Ry. Co., 4 I. C. C. Rep., 469; Duncan v. Atchison, T. & S. F. Ry., 4 I. C. C. Rep., 385, and 6 Rep., 85; Beale & Wyman on R. R. Rate Regulation, paragraphs 517, 518, 519 and 919.

In determining the reasonableness of rates, the court can not rest

its judgment on one set of rates for specific articles, but must take into consideration all rates of the road as an entirety. The test as to the reasonableness of rates is on the entire line, and the railway company can not claim the right to earn a net profit on each specific article carried; justice to the public may require in respect of one road rates upon a particular commodity different from those prescribed on other roads. The railroad company is not entitled to any profit on each class of freight. Railroad Com. v. Weld & Neville, 73 S. W., 533; Minneapolis & St. L. Ry. v. Minnesota, 186 U. S., 265; St. Louis & S. F. Ry. v. Gill, 156 U. S., 665; Covington & Lexington Turnpike Road Co. v. Sandford, 164 U. S., 598; Smyth v. Ames, 171 U. S., 364; Matthews v. Board of Cor. Com., 166 Fed., 10; Southern Ry. Co. v. McNeill, 155 U. S., 756; Atlantic Coast Line R. R. Co. v. North Carolina Cor. Com. 206 U. S., 1; Pensacola & A. R. R. Co. v. Florida, 3 L. R. A., 661; Central Yellow Pine Asso. v. Illinois C. R. Co., 10 Inter. Com. C. Rep., 505; Beale & Wyman on R. R. Rate Regulation, paragraphs 317, 318 and 323.

Mr. Justice Brown delivered the opinion of the court.

Certified question from the Court of Civil Appeals for the Third Supreme Judicial District as follows:

"The above styled and numbered cause is now pending in the Court of Civil Appeals of the Third Supreme Judicial District, and as preliminary to certifying the questions hereinafter propounded, we make the following statement:

"This is a suit filed by the Gulf, Colorado & Santa Fe Railway Company, the Gulf, Beaumont and Kansas City Railway Company and the Gulf, Beaumont & Great Northern Railway Company, in the District Court of Travis County, to set aside certain orders of the Railroad Commission of Texas, concerning lumber rates to Port Arthur and Sabine Pass, Texas.

"The District Court sustained a general demurrer to plaintiff's amended petition, and they declining to amend, judgment was entered for the defendant, and from this judgment the appellants have perfected an appeal to this court. The amended petition to which the general demurrer was sustained is as follows:

" 'The State of Texas,        In the District Court of Travis
" 'County of Travis.        County, Texas, 26th Judicial District.
" 'To the Honorable Chas. A. Wilcox, Judge of said Court:

" 'Your petitioners, the Gulf, Colorado & Santa Fe Railway Company, the Gulf, Beaumont & Kansas City Railway Company, and the Gulf, Beaumont & Great Northern Railway Company, with leave of the court first had, file this their first amended original petition, in lieu of their original petition filed on May 24, 1906, and complaining of the Railroad Commission of Texas, as defendant, respectfully aver:

" '1st. That your petitioners, hereinafter called the plaintiffs, are each railroad corporations, duly incorporated and organized under the laws of the State of Texas, and were such at all times hereinafter mentioned. That plaintiff, the Gulf, Colorado & Santa Fe Railway Company, is the lessee of and operating the railroad lines

of the other plaintiffs under leases executed on or about the first day of December, 1903, there being a separate lease between the Gulf, Colorado & Santa Fe Railway Company and each of the other plaintiffs. That each of said leases are for a term beginning December 1, 1903, and ending the 30th day of June, 1913, subject, however, to the tenth paragraph of each of said leases, which reads:

" 'Tenth. If either of the parties hereto at any time during the continuance of the term of this lease, shall give to the other party written notice that it, the party giving such notice, elects to terminate this lease on the last day of the third month after the month during which such notice shall be given, then this lease shall terminate on the last day of such third month after the month in which such written notice shall be given, anything herein contained to the contrary, notwithstanding.'

" 'That under the terms of said leases the said Gulf, Colorado & Santa Fe Railway Company is entitled to operate the railroads and exercise all of the franchises and rights of each of the other plaintiffs. That a copy of one of said leases is filed herewith, marked 'Exhibit B' and made a part hereof; that the other lease is in identically the same language, except the description of the property leased. That the Gulf, Beaumont & Kansas City Railway Company, and the Gulf, Beaumont & Great Northern Railway Company join as plaintiffs herein, because the rates and orders of the said Railroad Commission of Texas hereinafter complained of, affect the value of their respective properties. That the railroad of the said Gulf, Beaumont & Kansas City Railway Company extends from Beaumont, in Jefferson County, Texas, to Rogan, in Jasper County, Texas; and that the railroad of the Gulf, Beaumont & Great Northern Railway Company extends from said Rogan, in Jasper County, to Center, in Shelby County, State of Texas. That the distance from Beaumont to said Rogan is 62.44 miles, and the distance from said Rogan to Center is 77.7 miles. That there is a spur track of the Gulf, Beaumont & Kansas City Railway extending from Call Junction, in Jasper County, Texas, to Call, in Newton County, Texas. That Kirbyville, a station on the Gulf, Beaumont & Kansas City Railway, is 52.4 miles from Beaumont. That the distance from Beaumont to Port Arthur, via the Texarkana and Fort Smith Railway is 19.9 miles. That the distance from Beaumont to Sabine Pass via the Texas & New Orleans Railroad, formerly the Sabine & East Texas Railroad, is 30 miles. That on April 1, 1899, or sometime prior thereto, the plaintiff, the Gulf, Beaumont & Kansas City Railway Company and the Texarkana & Fort Smith Railway Company, acting together, established a through rate of four (4) cents per hundred pounds on lumber from Kirbyville and points between Kirbyville and Beaumont to Port Arthur, said rate, however, applying only to lumber in car loaded to a minimum of fifty thousand (50,000) pounds. That in the division of said rate between the Gulf, Beaumont & Kansas City Railway Company, and the Texarkana & Fort Smith Railway Company, each company was allowed or was entitled to two (2) cents. That the said rate was improvidently established, in the nature of an experiment, by the said Gulf, Beaumont & Kansas City Railway Company,

and turned out, as hereinafter more specifically alleged, to be wholly unremunerative, unreasonable and unjust to it, the said Gulf, Beaumont & Kansas City Railway Company. That thereafter, on or about the 18th day of March, 1900, the said Railroad Commission made an order putting in effect said rate of four (4) cents per hundred pounds from Rogan and points between Rogan and Beaumont to Sabine Pass, with a minimum weight of only 30,000 pounds of lumber to the car, and that said order was so made against the protest and without the consent of your petitioners or any of them. That on or before the 28th day of February, 1903, the said Railroad Commission, without the consent of any of your petitioners, and over their objection and protest, made an order applying said four (4) cent rate to Port Arthur on car loads of lumber with a minimum weight of only thirty thousand (30,000) pounds to the car. That at all times herein mentioned the cars used by your petitioners and by the other railroads mentioned herein, could have been safely loaded with fifty thousand (50,000) pounds of lumber to the car, and can be so loaded hereafter. That your petitioner, the Gulf, Beaumont & Kansas City Railway Company, applied to the said Railroad Commission for permission and authority to cancel said four (4) cent rate, both to Port Arthur and Sabine Pass, and that such petition to cancel such rate was denied by said Commission on April 7, 1900, and that another petition of said Gulf, Beaumont & Kansas City Railway Company to cancel said rate was denied on December 27, 1900. That on May 16, 1903, the said Railroad Commission, by its Chairman, advised in writing the General Freight Agent of the Gulf, Beaumont & Kansas City Railway Company that no specific authority was granted by the said Railroad Commission for said rate of four (4) cents per hundred pounds from Kirbyville and points south thereof to Port Arthur, but that as it was applied, the said Railroad Commission had declined to authorize its cancellation, the position of the said Railroad Commission apparently being that because the railroad company had once made a mistake in putting in a rate which was too low and unremunerative that it should be compelled to continue such rate in effect unto the end of time. That on or about the 8th day of April, 1904, the said Railroad Commission, without the consent of any of your petitioners, and over their objection and protest, by an order made on the 18th day of March, 1904, put said rate of four (4) cents per hundred pounds in effect from Rogan and points between Rogan and Kirbyville to Sabine Pass and Port Arthur. That Rogan is distant from Beaumont 62.44 miles. That on March 18, 1904, the said Railroad Commission made and served on your petitioner the following order:

" 'Office of Railroad Commission of Texas.<br>
" 'Circular No. 2028.<br>
" 'Amending Commodity Tariff No. 34.<br>
"Rates on Lumber from G., C. & S. F. points north of Beaumont<br>
To Sabine Pass and Port Arthur.<br>
" '(Notice, Circular No. 2015.   Hearing No. 462, March 15, 1904.)

" 'Austin, Texas, March 18, 1904.

" 'It is hereby ordered by the Railroad Commission of Texas that Commodity Tariff No. 34, issued by this Commission to apply on lumber and articles taking lumber rates, in car loads, transported by railroads between points in Texas and effective May 24, 1901, be amended by adding thereto the following item:

" 'Effective April 8, 1904. Rates on lumber and articles taking same rates, in car loads, from stations on the Gulf, Colorado & Santa Fe Railway north of Beaumont to Sabine Pass and Port Arthur, shall be as follows:

" 'From Rogan and south............................4 cents.
" 'From North of Rogan to Center, inclusive............6 cents.

" 'L. J. Storey, Chairman.

" 'Attest:                          " 'Allison Mayfield, ·
" 'E. R. McLean,                   " 'O. B. Colquitt,
     " 'Secretary.                     " 'Commissioners.'

" 'Said order was so made by said Railroad Commission without the consent and against the objection and protest of your petitioners. That on September 16, 1904, your petitioners filed with said Railroad Commission a petition protesting against the continuance of said rate of four cents per hundred pounds from Rogan and points south thereof to Sabine Pass and Port Arthur, and of said rate of six cents per hundred pounds from points north of Rogan to Sabine Pass and Port Arthur, which said petition concluded with the following prayer:

" 'Premises considered, your petitioners pray they be allowed to established rates on lumber and other forest products from points of origin herein above referred to, to Port Arthur and Sabine Pass, which will yield your petitioners, the Gulf, Colorado & Santa Fe Railway Company, to Beaumont, not less than the Kansas City Southern Railway realizes for equal distances, viz.:

5    cents per hundred pounds for  45 to  67 miles.
6     "      "      "      "      "   67 " 110    "
7     "      "      "      "      "  110 " 153    "
8½    "      "      "      "      "  153 " 182    " ,

" 'A true copy of which petition is hereto annexed, marked 'Exhibit A' and made a part hereof. That after due notice given by the said Railroad Commission a hearing was had upon said petition by said Railroad Commission, and after having heard evidence and argument, the said Commission on May 13, 1905, made the following order:

" 'Hearing No. 521.              Austin, Texas, May 13, 1905.
" 'Application of G., C. & S. F. Ry. Co. for
increase in rates on lumber from points north
of Beaumont to Sabine Pass and Port Arthur.

" 'The above numbered and entitled cause having been called for trial in its regular order at the February term, and the applicant and other interested parties appearing before the Commission, and the Commission having heard the evidence offered and upon the conclusion thereof and in pursuance of request of the parties decision was postponed until filing of written argument upon the subject matter of said application, and said written argument of the application having now been filed herein, and the Commission having given said

application due consideration, it is of the opinion that the same should be refused.

" 'It is therefore hereby ordered that said application be and the same is hereby refused and this cause dismissed.

" '(Signed) L. J. Storey, Chairman.

" 'Attest:
  " '" 'Allison Mayfield,
" 'E. R. McLean,
   " 'O. B. Colquitt,
   " 'Secretary.
       Commissioners.'

" 'That after due notice on January 16, 1906, the said Railroad Commission had a hearing at its office in the city of Austin on all lumber rates prevailing in Texas, and at said hearing your petitioners again protested against the continuance of said rates hereinbefore described to Port Arthur and Sabine Pass. That on February 12, 1906, the said Railroad Commission again refused to cancel, amend or increase the said rates, but continued the same in full force and effect. That said rates and each and all of them are unreasonable and unjust to your petitioners, and to each of your petitioners. That as aforesaid, the division of said four cent rate only allows to your petitioners the sum of two cents per hundred pounds with a minimum of only thirty thousand pounds to the car for the haul from Rogan and points south of Rogan to Beaumont, and that the division of said six cent rate only allows to your petitioner for the haul from points north of Rogan to and including Center to Beaumont, the sum of four cents per hundred pounds. That the said two and four cents per hundred pounds, respectively, are wholly insufficient to compensate your petitioners for the service performed. That the same not only do not adequately compensate your petitioners for the service rendered in the transportation of such lumber, but that the said rates are insufficient to pay the actual expense of performing the service, and that the services under such rates are rendered by your petitioners at an actual loss. That the said rates are wholly insufficient to compensate your petitioners for the cost of the service and the same do not enable your petitioners to earn enough for the transportation of lumber under such rates to contribute anything towards the payment of the value of the use of the said railroads, or to contribute anything towards a fair return on the value of the said railroads or the cost thereof, and are not, have not been, and will not be sufficient to pay the actual cost of transporting the lumber, without contributing anything towards the expense of the repair or maintenance of said railroads, the taxes thereon or the interest on the value thereof, but that the effect of the said rates is, has been, and will be to require your petitioners to give the use of the said railroads to shippers of lumber on said rates free and without any compensation, and without reasonable compensation, or any compensation whatever for the use of said railroads, either to the owners thereof, or to the said lessee thereof, and at an actual loss on each car of lumber shipped on such rates, and your petitioners aver that the earnings remaining after paying operating expenses (not including in operating spurs, taxes, rentals, interest on bonds, or other indebtedness or dividend on capital stock) of said railroads at the end of each week, month and year

would have been greater during all the times mentioned herein had the lumber shipped to Port Arthur and Sabine Pass on such rates never been shipped at all, and that such will continue to be the case as long as such rates are in effect.

" 'That the rates herein complained of are, have been, and will be in the future much lower than necessary to freely move the shipments of lumber; that under the rates which your petitioners so. requested the Railroad Commission of Texas to permit them to charge, the manufacturers of lumber and the shippers of lumber could have in the past freely shipped their lumber, and can in the future freely ship their lumber from all stations on said lines of railroad from Center to and inclusive of the first station north of Beaumont, to Sabine Pass and Port Arthur, and there sold. the same heretofore shipped and can sell the same hereafter shipped, at a profit of more than 25 percent, being a much higher profit than they obtained in the past on lumber shipped to and sold at any other place or places in the State of Texas or elsewhere, and can obtain in the future by shipping lumber to and selling lumber at any other place or places in the State of Texas, or elsewhere; that the manufacturers of lumber in the territory north of Beaumont to Center, inclusive of the latter place, adjacent to and tributary to said lines of railroad, could have in the past and can in the future manufacture and ship lumber, paying the rates thereon which your petitioners asked the Railroad Commission of Texas to establish to Sabine Pass and Port Arthur, and there have sold or sell the said lumber at a profit of at least 25 percent, being a much higher profit than they could have realized in the past or can realize in the future by shipping lumber to and selling lumber at any other place or places in the State of Texas or elsewhere. That the effect of the unreasonably low rates complained of herein was and is to enable the manufacturers of lumber in said territory to ship lumber therefrom to Sabine Pass and Port Arthur, and there sell lumber at a higher rate of profit than can be obtained by shipping lumber (from the same places) to and selling lumber at any other place or places in the State of Texas or elsewhere, and have sold and to hereafter sell said lumber at Port Arthur and Sabine Pass for less prices than they sold or hereafter can sell similar lumber for at any other place or places in the State of Texas or elsewhere; that the towns or cities of Port Arthur and Sabine Pass, and the citizens thereof have been in the past, are now, and will be in the future, more wealthy, owners of more property in value per capita, and have enjoyed and will enjoy larger profits from their respective occupations and greater prosperity than any other towns or cities or the citizens thereof, of similar population in the State of Texas; that is not now and has not been since the low rates herein complained of were in effect, any pestilence, flood, storm, fire or other calamity in said towns or cities or either of them or any fact which would justify, call for, or even suggest lower rates on lumber or other freights for the same service or distances to such towns or either of them, than to other places in the State of Texas.

" 'That the distance between stations north of Beaumont on said lines of railroad, and Beaumont, are as follows, the distance set

opposite each station being the distance from said station to Beaumont:

| Stations. | No. of Miles. |
|---|---|
| Helbig, | 4 |
| Treadway, | 7 |
| Funston, | 8.2 |
| Loeb, | 9.3 |
| Lumberton, | 13.8 |
| Fletcher, | 15.8 |
| Silsbee, | 21 |
| Lillard, | 23.8 |
| Fords Bluff, | 26.7 |
| Quinn, | 30.3 |
| Buna, | 36.1 |
| Bessmay, | 38.4 |
| Call Junction, | 48 |
| Kirbyville, | 52.5 |
| Leeton, | 56.1 |
| Zierath, | 60 . |
| Rogan, | 62.5 |
| Heywood, | 65.5 |
| Jasper, | 73.6 |
| Horton, | 84.3 |
| Browndell, | 87.4 |
| Brookeland, | 90.7 |
| Bronson, | 104.8 |
| Venable, | 115 |
| San Augustine, | 120.5 |
| Duff, | 128.5 |
| Neuville, | 131.4 |
| Center, | 139.9 |

" 'That the rates on lumber established by the Railroad Commission of Texas from the above named stations to Beaumont, are as follows, said rates being in cents per hundred pounds, and the number of cents or cents and fractions thereof stated opposite each station being the rate from said station to Beaumont:

| Station. | Rate. |
|---|---|
| Helbig, | 2½ |
| Treadway, | 3½ |
| Funston, | 3½ |
| Loeb, | 3½ |
| Lumberton, | 3½ |
| Fletcher, | 5 |
| Silsbee, | 6 |
| Lillard, | 6 |
| Fords Bluff, | 7 |
| Quinn, | 7½ |
| Buna, | 7½ |
| Bessmay, | 7½ |

| Station. | Rate. |
|---|---|
| Call Junction, | 7½ |
| Kirbyville, | 8 |
| Leeton, | 8¾ |
| Zierath, | 8¾ |
| Rogan, | 8¾ |
| Heywood, | 8¾ |
| Jasper, | 8¾ |
| Horton, | 8¾ |
| Browndell, | 8¾ |
| Brookeland, | 8¾ |
| Bronson, | 8¾ |
| Venable, | 8¾ |
| San Augustine, | 8¾ |
| Duff, | 10 |
| Neuville, | 11¼ |
| Center, | 11¼ |

" 'That said rates so shown from said stations to Beaumont, or higher rates, have been established by the Railroad Commission of Texas and in effect during all the times mentioned herein; that all shipments of lumber to which the rates herein last above stated are applicable are hauled by your petitioners from point of origin at Center or south thereof to Beaumont, and that the service performed by your petitioners in hauling such shipments is exactly the same as the service performed by them in hauling shipments to Beaumont that are destined to Port Arthur and Sabine Pass, and that the cost of such service is the same—that is to say, that from a given station north of Beaumont it costs your petitioners the same to haul a given quantity of lumber to Beaumont, to be delivered there to consignee, as it does to haul the same quantity of lumber from the same station to Beaumont, to be delivered to the connecting line for transportation from Beaumont to Sabine Pass or Port Arthur.

" 'That the said rates to Port Arthur and Sabine Pass are greatly lower than the rates established by the said Railroad Commission for similar service in the transportation of lumber in other directions and to and between other parts of the State, except the rate established by said Railroad Commission to Port Bolivar, which rate was established over the protest of your petitioners, but as no considerable business has moved thereunder, your petitioners have not been very materially injured thereby to date. That under such low, unreasonable and unjust rates to Port Arthur and Beaumont, numerous shipments have been made in the past and are continuing to be made, and that the loss resulting to your petitioners, particularly to your petitioner, the Gulf, Colorado & Santa Fe Railway Company, from having to haul lumber on such rates, amounts and will amount to at least the sum of One Thousand ($1,000) per month. That if said low rates to Port Arthur and Beaumont, which are in the nature of special rates, are cancelled, that the following rates established by the Railroad Commission of Texas for transportation for similar distances over two or more lines of railroad will apply, to wit:

" 'Through joint rates on lumber to Port Arthur and Sabine Pass:

| Distance. | | Rates. |
|---|---|---|
| 24 miles and less | | 8 cents |
| 30 | and over 24 miles | 9 |
| 36 | 30 | 10 |
| 42 | 36 | 11 |
| 48 | 42 | 12 |
| 54 | 48 | 13 |
| 60 | 54 | 14 |
| 72 | 60 | 15 |
| 84 | 72 | 16 |
| 90 | 84 | 17 |
| | over 90 | 17½ |

" 'That the distance from the stations on the said Gulf, Beaumont & Kansas City Railway and the said Gulf, Beaumont and Great Northern Railway to Port Arthur and Sabine Pass are as follows:

| Station. | Miles to Port Arthur. | Sabine Pass. |
|---|---|---|
| Center | 160.6 | 170.7 |
| Neuville | 152.1 | 162.2 |
| Duff | 149.2 | 159.3 |
| San Augustine | 141.2 | 151.3 |
| Bronson | 124.5 | 134.6 |
| Brookeland | 113 | 123.1 |
| Browndell | 110.4 | 120.5 |
| Horton | 104.2 | 114.3 |
| Jasper | 93.4 | 103.5 |
| Rogan | 82.3 | 92.4 |
| Leeton | 76 | 86.1 |
| Kirbyville | 72.3 | 82.4 |
| Call Junction | 67.7 | 77.8 |
| Bessmay | 58.2 | 68.3 |
| Buna | 55.9 | 66 |
| Quinn | 49.5 | 59.6 |
| Fords Bluffs | 46.3 | 56.4 |
| Lillard | 43.5 | 53.6 |
| Silsbee | 43.5 | 53.6 |
| Silsbee Junction | 40.8 | 50.9 |
| Fletcher | 35.7 | 45.7 |
| Lumberton | 33.6 | 43.7 |
| Funston | 27.9 | 38 |
| Beaumont | 19.9 | 30 |

" 'That out of said rates, if so applied, your petitioner, the Gulf, Colorado & Santa Fe Railway Company, would receive as a division or as its rate for the haul to Beaumont, to wit: 50 percent to 75 percent of said rates.

" 'That under such division of rates to Beaumont which it will

so receive if said low rates now in effect are cancelled, your petitioner, the Gulf, Colorado & Santa Fe Railway Company, will earn at least the sum of $3,000 per month on shipments of lumber to Port Arthur and Sabine Pass more than it will earn if said present low rates are continued in effect. That all of the places hereinbefore mentioned are in the State of Texas.

"'That the enforcement of said low rates to Beaumont and Port Arthur has *pro tanto* taken the property of your petitioners,' said railroads, and donated or devoted the same to the use of the shippers of said lumber to Beaumont and Port Arthur, without compensation, contrary to the Constitution of the United States and of the State of Texas, and the enforcement thereof in the future will have like effect, and the enforcement thereof has *pro tanto* deprived your petitioners of their property without due process of law, contrary to the Constitution of the State of Texas, and contrary to section 1 of the 14th Amendment to the Constitution of the United States, and the enforcement thereof in the future will *pro tanto* deprive your petitioners of their said property without due process of law, contrary to the Constitution of the State of Texas and to section 1 of the 14th Amendment to the Constitution of the United States.

"'That all of the facts herein alleged were proven by evidence properly submitted to the said Railroad Commission in the hearings before said Railroad Commission hereinbefore mentioned.

"'Premises considered, your petitioners pray that the Railroad Commission of Texas be cited in accordance with law to appear. and answer herein, and that on a hearing of this cause judgment be entered annulling and cancelling each and all of the rates to Port Arthur and Beaumont hereinbefore described and complained of, and each and all of the orders of said Railroad Commission of Texas hereinbefore described and complained of, and annulling and cancelling any and all action of the said Railroad Commission of Texas hereinbefore complained of, and that your petitioners have judgment for their costs in this behalf expended, and for such other and further relief as they may be entitled to in law and in equity.'

"In view of the importance to the public and the railway companies of this State of the questions certified, and on account of the importance of determining the jurisdiction and authority of the Railroad Commission in such matters, and on account of the fact that we have not fully agreed as to a determination of the questions certified, we certify to your Honorable Court the following questions:

"1.   Did the trial court err in sustaining the general demurrer to plaintiffs' petition? To reduce this general question to those that we especially desire the court to answer, we propound the following additional questions:

"2.   Was it necessary for the plaintiffs, in attacking the order of the Railroad Commission, fixing the rates in question on lumber between the points named in the petition, as unjust and unreasonable, to allege that the entire body of rates on other commodities was unjust and unreasonable? Or, in other words, that the rates on other commodities transported would not furnish the railway companies a reasonable earning or profit on the investment, considering

as embraced in the term 'investment' all matters upon and for which the railroads would be entitled to an earning or profit?

"3. Repeating this last question in a different form, we suggest that as the plaintiffs' petition alleges that by reason of the order of the Commission the railway companies were required to transport lumber under the rates in question without some compensation for such services, or at a loss of $1000 a month, was it necessary, in order to show that such order was unreasonable and unjust to further allege and show that from other commodities transported by the railroads there would not result a reasonable profit or earning?

"4. Would an order of the Railroad Commission fixing rates for transportation of a commodity, which would result in a loss for such services to the railway companies of a sum alleged in plaintiffs' petition, or that would not furnish the railway companies for such services performed some compensation therefor, have the effect of depriving the railway companies of their property without due process of law?

"5. Would it be just and reasonable to the railway companies, or would it be a fair and just discrimination, or would it be in effect class legislation to require the railway companies to transport commodities of a certain class of shippers at a loss to the railway companies, or at a fixed rate that would not furnish to the railway companies some compensation for the services rendered?

"6. Would it be lawful, just and reasonable for the Railroad Commission by its order, to permit a shipper or class of shippers to have his or their traffic transported for less than the cost of carriage, and without any compensation to the carrier for the services performed, or the value of the property devoted to the use thereof, expecting the carrier to obtain a fair compensation for the general use of its property from other shippers?

"We desire to explain that in using the expression 'traffic,' 'commodity' and 'shipment' in the foregoing questions, we merely intend to apply these terms to domestic shipments within this State, and do not intend that they shall be considered in connection with interstate traffic. The court's attention is called to this in view of the rule announced in Smyth v. Ames, 169 U. S., 466; s. o. 43 L. ed., 197, and Minneapolis & St. Paul R. R. Co. v. the Minnesota Railway Commission, 186 U. S., 260, 46 L. ed., 1151.

"These questions, in our opinion, are all raised by the appellants in their briefs."

The first question propounded presents the whole case, to which we answer, the court did not err in sustaining the general demurrer to plaintiff's petition.

This action is authorized by the following sections of the Revised Statutes:

"Art. 4565. If any railroad company or other party at interest be dissatisfied with the decision of any rate, classification, rule, charge, order, act or regulation adopted by the commission, such dissatisfied company or party may file a petition setting forth the particular cause or causes of objection to such decision, act, rate, rule, charge,

classification or order, or to either or all of them, in a court of competent jurisdiction in Travis County, Texas, against said commission as defendant. Said action shall have precedence over all other causes on the docket of a different nature, and shall be tried and determined as other civil causes in said court. Either party to said action may appeal to the Appellate Court having jurisdiction of said cause, and said appeal shall be at once returnable to said Appellate Court, at either of its terms, and said action so appealed shall have precedence in said Appellate Court of all causes of a different character therein pending; provided, that if the court be in session at the time such right of action accrues, the suit may be filed during such term and stand ready for trial after ten days' notice."

"Art. 4566. In all trials under the foregoing article the burden of proof shall rest upon the plaintiff, who must show by clear and satisfactory evidence that the rates, regulations, orders, classifications, acts or charges complained of are unreasonable and unjust to it or them."

It will be observed that the railroad company under these sections had the right to attack any rate, or it might have attacked any number or all of the rates prescribed for it by the Railroad Commission as being unreasonable and unjust. It is plain from the terms of the law that the railroad company was not required to attack all of the rates prescribed, nor is it necessary in order to show the unreasonableness or injustice of the rate attacked to prove that the operation of the road under the rates prescribed will not produce a reasonable and just compensation for services rendered by the company to shippers and a reasonable return upon the investment made and the money expended in carrying on the business. Railroad Commission v. Houston & T. C. Ry. Co., 90 Texas, 352; Same v. Weld & Neville, 96 Texas, 403.

While the railroad company had the right to call in question the one rate, it was required to show by clear and satisfactory evidence that the rate so attacked was "unjust and unreasonable." It follows that the petition must contain allegations of such facts and circumstances as would, if true, authorize the court to adjudge the rate to be unjust and unreasonable as a matter of law. The petition in this case alleges that hauling lumber over that portion of its road designated in the petition, at the rate specified by the Commission, will not yield a sufficient revenue to pay the cost of transportation. There is nothing in the petition to show what were the earnings of the railroad in hauling lumber over the remainder of its said railroad. It does not show the amount of lumber traffic carried over that road from points beyond the stations designated from which the objectionable tariffs are prescribed. It may be and doubtless is a fact that trains which start from points beyond the specified stations take up and carry as a part thereof cars loaded with lumber destined to Beaumont or Port Arthur, thus the operation of that train may yield a sufficient profit to make the rates reasonable, whereas, taken separately, the rate from any one of the points, if carried by separate trains, would not be reasonable. It may be true that such freight, though not remunerative, considered alone, would, when thus carried,

contribute to the cost of such train to a degree that would be reasonable compensation, therefore the rates can not be held, upon the facts stated, unreasonable and unjust as a matter of law. The railroad company can not select one rate and a particular part of its road for the application of that rate, showing thereby the deficiency in profit, and from that establish that the rate is not reasonable. (St. Louis & San Francisco Ry. Co. v. Gill, 156 U. S., 649.) In the case cited the court said: "The company can not claim the right to earn a net profit from every mile, section, or other part into which the road might be divided, nor attack as unjust a regulation which fixed a rate at which some such part would be unremunerative; that it would be practically impossible to ascertain in what proportion the several parts should share with others in the expenses and receipts in which they participated."

We think it unnecessary to discuss the other questions submitted. Opinion filed December 2, 1908.

### ON MOTION FOR REHEARING.

In making our former answer to the questions propounded by the Court of Civil Appeals we assumed that the railroads operated by the appellant extended beyond Center to the north, and, upon that assumption, we based our conclusion. We were mistaken as to that fact; the two railroads by connecting with each other reach from Beaumont to Center and terminate at the latter place, the appellant operating no road beyond Center, therefore, we grant the motion for a rehearing and will re-examine the question.

This action was brought under articles 4565 and 4566 of the Revised Statutes, which are copied in our former opinion. In the case of Railroad Commission v. Houston & Texas Central Railroad Co., 90 Texas, 340, this court held that in a proceeding under those articles of the statute it was not necessary for the railroad company to show that the rate attacked was confiscatory, but that the issue was whether or not, under all the facts and circumstances, the rate was unreasonable and unjust, and, in answer to the second question propounded in that case, the court said: "In actions of this character the courts will determine the question of reasonableness and justice of any matter by the same rules as if it were an issue in other classes of suits, except as to the conclusive character of the evidence." (90 Texas, 355; Weld v. Neville, 96 Texas, 404.) If articles 4565 and 4566 had not been enacted by the Legislature the courts would have no authority to revise rates made by the Railroad Commission, but in the exercise of their equity powers the courts could enjoin such rates if found to be confiscatory; that is, violative of the Constitution of this State or the United States. Those articles conferred authority upon the courts to examine into the reasonableness and justice of such rates and in the exercise of that jurisdiction the courts will try the questions as if they arose in any other proceeding. Article 4566 places the citizen in such an action as this upon the same footing as it does the railroad corporations and re-

quires of such citizen who may be a shipper upon the railroad to make just as clear and conclusive proof of the unreasonableness or injustice of the rates as is required of a railroad company.

It is true that by article 4566 the railroad company, or shipper, who attacks the rate or order of the Commission, has the burden to show by "clear and satisfactory evidence" that the rate or order, etc., attacked in the proceeding is unjust and unreasonable in its effect upon such carrier or person. The question presented to us is, if the facts alleged in the applicant's petition shall be established by "clear and satisfactory evidence," would a jury be authorized to find a verdict that such rates, charges, etc., were unreasonable and unjust to the appellant? In passing upon the question we must consider the allegations in the petition as facts proved by "clear, satisfactory and uncontroverted evidence." It is a matter of common knowledge that lumber is one of the principal articles of transportation on the railroads and a chief source of income. It being true that the revenue derived from hauling lumber over the appellant's road does not yield sufficient revenue to pay for the costs of transporting it, not including interest on investment, taxes or other expenses, there could be no reasonable doubt that such rate applied to lumber would be unreasonable and unjust to that railroad.

It does not follow that a railroad company might select an unimportant article and attack the rate prescribed for that as being unreasonable because it would not pay for the transportation of such article alone. Public carriers must of necessity carry many things which of themselves would not compensate them for the carriage.

The trial court erred by sustaining the demurrer to plaintiff's petition.

Opinion filed March 10, 1909.