### RAILROAD COMMISSION OF TEXAS et al. v. SAN ANTONIO COMPRESS CO. *
### (No. 6751.)

(Court of Civil Appeals of Texas. Austin. May 7, 1924. Rehearing Denied June 18, 1924.)

1. Carriers ⬳18(6)—District court may enjoin enforcement of exception to Railroad Commission's rule as to concentration of cotton for warehousing.

Under Rev. St. 1911, arts. 6656, 6657, 6658, district court may grant temporary injunction against enforcement of exception, granted by Railroad Commission in favor of certain town, to general rule regulating concentration of cotton for warehousing, if unjust, unreasonable, or discriminatory, as in any other civil proceeding.

2. Injunction ⬳152—Hearing in vacation on motion to dissolve temporary injunction does not preclude further hearing on merits.

Hearing in vacation, on motion to dissolve temporary injunction, does not preclude further hearing on merits after overruling of motion nor granting of permanent relief when case is duly reached for hearing, though appeal is allowed under Rev. St. art. 4644, as amended in 1919 (Vernon's Ann. Civ. St. Supp. 1922, art. 4644).

3. Appeal and error ⬳954(1)—Injunction ⬳135—Granting or refusal of temporary injunction discretionary and not reviewable unless discretion abused.

Granting or refusing of temporary injunction is within sound discretion of trial court, whose action is not reviewable, unless abuse of discretion clearly appears.

4. Carriers ⬳18(6)—Whether town, granted exception to Railroad Commission's rule in favor of nearest bonded warehouses, offered better market than city discriminated against held for trial court.

Whether town, granted exception by Railroad Commission to general rule compelling shippers of cotton for warehousing from or past bonded warehouses to pay more freight, offered better market for cotton than city wherein warehouse of company suing to enjoin enforcement of exception as discriminatory was located held matter of fact for trial court on conflicting evidence.

5. Appeal and error ⬳931(1)—Presumption indulged in support of judgment in absence of fact findings by court.

In absence of fact findings by trial court, appellate court must indulge every favorable presumption in support of judgment.

6. Injunction ⬳136(2)—Temporary injunction against enforcement of exception to Railroad Commission's rule in favor of nearest bonded warehouses held not abuse of discretion.

Granting temporary injunction against enforcement of exception, granted by Railroad Commission to certain town, to general rule requiring shippers of cotton for warehousing from or past bonded warehouses to pay more freight, held not abuse of discretion; such exception granting bonded warehouse in such town privilege denied all other such warehouses in prescribed area under same or better market conditions.

On Motion for Rehearing.

7. Constitutional law ⬳70(3)—Courts cannot pass on wisdom of legislation.

It is not court's function to pass on wisdom of legislation; remedy being with Legislature.

8. Carriers ⬳18(6)—Railroad Commission's orders may be set aside by injunction before final judgment.

Under Rev. St. art. 6657, requiring that action to set aside order of Railroad Commission be "tried and determined as all other civil cases," such orders are subject to action of courts in same manner, and to same orders and method of procedure, as other civil suits, and may be set aside by injunction on sworn petition or ex parte hearing before final judgment after hearing on merits.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit by the San Antonio Compress Company against the Railroad Commission of Texas and others. From order overruling motion to dissolve temporary injunction, the Commission appeals. Affirmed.

W. A. Keeling, Atty. Gen., Frank M. Kemp, Asst. Atty. Gen., and A. J. Wirtz, of Seguin, for appellant.

Wm. Aubrey, of San Antonio, and Hart, Patterson & Hart, of Austin, for appellee.

BAUGH, J. The San Antonio Compress Company, a corporation, doing a compressing and bonded warehouse business in the city of San Antonio, brought this suit against the Railroad Commission of Texas and the Galveston, Harrisburg & San Antonio, Missouri, Kansas & Texas, and San Antonio & Aransas Pass Railway Companies, to set aside as unjust, unreasonable, and discriminatory circular No. 5887, being an exception in favor of the town of Seguin to the general rule of the Railroad Commission, regulating the concentration of cotton for warehousing. It appears that the Railroad Commission pro-

mulgated several years ago a general rule requiring cotton, at the option of the shipper, to be concentrated for compression between points of origin and destination. If compressed at the first available compress en route, the railway company bears the expense of compressing; but, if not compressed at the first available compress, then the shipper must bear such expense. This rule seems to have been uniformly enforced by the railway companies in Texas. By compressing cotton the hauling capacity of the cars is approximately doubled. In the past few years numerous warehouses have been constructed throughout the state under laws passed to encourage same and under the supervision and regulation of the commissioner of markets and warehouses, and much cotton has been concentrated for warehousing and protection from damage by the weather. To meet competition many of the compresses over the state have constructed warehouses in compliance with the laws and regulations and have become bonded warehouses. In November, 1921, the Railroad Commission promulgated a rule known as circular No. 5456, amending commodity tariff 1–G, which gave to those shipping cotton for warehousing in bonded warehouses, the same advantages in freight rates as were given those who concentrated cotton for compressing; that is, where cotton was shipped to final destination from the warehouse during the same cotton season or within six months thereafter, the shipper could pay a through freight rate from point of origin to point of destination, and was entitled to a return of the local "flat" rate paid from point of origin to the warehouse. This was designated as a "concentration adjustment." The order or circular above mentioned, however, contained the following limitation upon this privilege of the shipper, viz:

"The concentration adjustment herein provided 'for warehousing' shall not be available when the haul into the warehousing point was from or past a station at which, at the time of the movement, there was located a state or federal bonded warehouse with capacity, available at that time, to have accommodated the shipment."

This circular or order seems to have been issued by the Railroad Commission at the instance of the commissoner of markets and warehouses, and to have been intended to encourage the construction of bonded warehouses locally, as well as to conserve the shipping facilities of the railways. Under this rule, and after conferring with the commissioner of markets and warehouses, and for the purpose of caring for additional cotton that would come to it as a result, the San Antonio Compress Company built, at a cost to it of about $25,000, additional facilities for housing cotton, and qualified as a bonded warehouse. It appears to be undisputed that as a matter of fact where compresses have bonded warehouses practically all of the cotton warehoused with them is also compressed by them before being shipped to final destination.

However, on June 14, 1923, after a hearing on the matter, the Railroad Commission issued circular No. 5887, amendatory of circular No. 5456 above described, containing the following exception:

"The provisions of paragraph (d) shall be waived on cotton consigned 'for warehousing' to Seguin, Texas, from all stations on the Galveston Harrisburg & San Antonio Railway, the Missouri-Kansas-Texas Railway of Texas, or the San Antonio & Aransas Pass Railway, distant less than one hundred (100) miles from Seguin, and shipments from such stations shall, when demanded, move 'flat' into such warehousing point,"

—paragraph (d) being the portion of circular No. 5456 above quoted.

So far as is shown by the record this is the only exception to the general rule regulating concentration for warehousing that has been made in Texas. The appellee, San Antonio Compress Company, under article 6657, R. S. 1911, attacked this exception by filing suit in the district court of Travis county, Tex., on July 14, 1923. On that day the district court granted appellee a temporary injunction against the Railroad Commission and the three roads named, restraining them from obeying, observing, or enforcing the exception granted in favor of Seguin. Upon motion made by the Railroad Commission to dissolve this injunction, filed on July 27th a hearing was had on August 17, 1923, and the motion to dissolve was by the trial court in all things overruled. From this action the Railroad Commission alone appeals.

## Opinion.

[1] Appellants predicate error of the trial court under three propositions of law. The first is that "the district court is without authority or jurisdiction to suspend an order, rate, or rule of the Railroad Commission of Texas until said order, rate, or rule has been adjudicated to be unreasonable, after a trial or hearing on the merits," citing articles 6656, 6657, and 6658, R. S. 1911, and Garson v. Steamboat Canal Co., 43 Nev. 298, 185 Pac. 801, 1119.

Article 6656 taken alone would seem to indicate that such a contention is correct. The law creating the Railroad Commission and defining its powers and duties discloses an intention to clothe that body with a semijudicial character, and but for articles 6656, 6657, and 6658, there would be some doubt as to the authority of the court to review its actions at all, except in cases where the Commission's rules, rates, regulations, etc., proved to be confiscatory, and amounted to taking property without due process of law. See G. C. &

S. F. Ry. Co. v. R. R. Com. of Tex., 102 Tex. 338, 113 S. W. 741, 116 S. W. 795; R. R. Com. v. Weld & Neville, 96 Tex. 404, 73 S. W. 529. Though the powers of the Railroad Commission are far reaching and important, and though article 6658, Revised Statutes, casts upon one attacking the acts of the Commission a more onerous burden of proof than is required in civil suits generally, article 6657 clearly subjects its orders, rules, regulations, etc., to review by the courts in a proper proceeding brought by an aggrieved party for that purpose, and imposes upon the courts the duty of determining whether or not such rules and regulations are unjust, unreasonable, or discriminatory. And in doing so the law provides that such actions "shall be tried and determined as other civil causes in said court." In answering a certified question as to the power of the courts to review the acts of the Railroad Commission, Judge Brown uses the following language:

"In actions of this character the courts will determine the question of the reasonableness and justice of any matter by the same rules as if it were an issue in other classes of suits, except as to the conclusive character of the evidence." R. R. Com. v. H. & T. C. Ry. Co., 90 Tex. 355, 38 S. W. 756.

See, also, Galveston O. of C. v. R. R. Com. (Tex. Civ. App.) 137 S. W. 745; G. C. & S. F. Ry. Co. v. R. R. Com., 102 Tex. 353, 113 S. W. 741, 116 S. W. 795.

Except as to character of proof required, and the precedence given such suits over other suits, both in the trial and appellate courts, no distinction is to be made between this character of suit and any other civil proceeding. It necessarily follows then that the trial court was authorized to grant a temporary injunction in the instant case under the same circumstances that he would in any other civil proceeding. The case of Garson v. Canal Co., 43 Nev. 298, 185 Pac. 805, 1119, cited by appellants, is not applicable because the Nevada statute specifically provides that no injunction shall issue until a hearing has been had upon the application and that the rates fixed by the Commission "shall remain in full force and effect until final determination by the courts having jurisdiction." Anyway our statutes and the cases cited control the case before us, and appellants' contention must be overruled.

[2] This appeal is from the action of the trial court in overruling appellant's motion to dissolve a temporary injunction. Prior to the amendment of 1919 to article 4644, Revised Statutes, no appeal was allowed in such case. So far as the record shows, no hearing has been had by the trial court to determine whether such injunction should be made permanent. Nor do we think the hearing on the motion to dissolve the temporary writ can be considered as such hearing on the merits. The temporary writ was intended merely to preserve the status quo until a full and complete hearing could be had on the merits of the controversy. It is necessarily temporary in character, and a hearing upon a motion to dissolve it, had in vacation, does not preclude a further and fuller hearing upon the merits of the case, nor the granting of permanent relief when the case is duly reached on the docket or set down for hearing by the trial court.

[3, 4] The granting or refusing of a temporary injunction is a matter within the sound discretion of the trial court, and that court's action in the premises is not reviewable on appeal unless it clearly appears from the record that there has been an abuse of that discretion. Sutherland et al. v. Winnsboro (Tex. Civ. App.) 225 S. W. 64; Beirne v. North Tex. Gas. Co. (Tex. Civ. App.) 221 S. W. 301; Ward Co. Water Improvement Dist. v. Irrigation District (Tex. Civ. App.) 214 S. W. 492. A careful consideration of the evidence fails to disclose the abuse of that discretion. This would suffice to dispose of this appeal without discussing the facts in detail, but the question of the reasonableness of the exception in favor of Seguin was gone into at some length on the hearing, and is brought before us. In view of the fact that the matter of making the injunction permanent seems not to have been disposed of, we deem it proper to discuss briefly the facts shown in the record.

The railroad companies have not appealed. Though the parties of record are the San Antonio Compress Company and the Railroad Commission, the controversy is in reality largely between the compress and warehouse at Seguin, the place in whose favor the exception was granted by the Commission, and the San Antonio Compress Company. It does not appear from the evidence that the exception complained of gives the Seguin warehouse any advantage in shipping rates over the San Antonio warehouse within the 100-mile radius, but it does appear that the Seguin warehouse is given a privilege or protection not given the San Antonio warehouse.

The state saw fit through the market and warehouse department and the Railroad Commission, in providing this "concentration adjustment" to encourage the construction of bonded warehouses locally over the cotton growing areas. This was a matter of public policy. In doing so, and through the promulgation of circular No. 5456, above described, it penalized the shipper of cotton for warehousing, if he shipped his cotton from or past a bonded warehouse, by compelling him to pay more freight. By means of higher freight rates in case cotton passed bonded warehouses, such local warehouses were in effect given a valuable preference on the storage of cotton raised in their locality. This seems to have been a fixed general policy, and under it numerous bonded warehouses have been constructed. Appellee ex-

pended some $25,000 in complying with the public warehouse law because such preference was assured it. This rule is, in a measure, a discrimination in favor of every bonded warehouse as to the cotton in its community against all other bonded warehouses, but a discrimination which was uniformly enforced until the exception attacked by this suit was made in favor of Seguin.

[5] A great deal of the testimony was rather speculative, or matter of estimate or opinion. The exception in Seguin's favor is sought to be justified in that through years of effort in improving its cotton throughout the area affected by the exception, Seguin has built up a better market for cotton than San Antonio affords, even for the same grade and class. The evidence was conflicting on this point, and we think the trial court could have properly found that, as an experienced cotton buyer testified, the price for which cotton sold depended, where there was an active competitive market, as was shown to be true of San Antonio, upon the length of the staple, its character, grade, quality, etc., as shown by the sample taken from the bale, and not on the place where it was grown or offered for sale. If that is true, and Seguin offers no better market for cotton than San Antonio, then there is no reason why any exception should be made in favor of Seguin. That was a matter of fact for the trial court to determine, and there is competent evidence to support such a finding. And, in the absence of any findings of fact by the trial court, we must indulge every favorable presumption in support of his judgment.

[6] But it is not denied that this exception in favor of Seguin does not inure to the benefit of shippers or growers of cotton in the area covered by it on cotton shipped to any other point than to Seguin. A better market for cotton at Luling, San Antonio, or San Marcos, than at Seguin, though all are within the area covered by this exception, would not permit a cotton shipper to pass the Seguin warehouse, under this exception, without paying the extra freight required under the general rules enforced by the Railroad Commission. The exception, even if authorized on the grounds urged, benefits the shippers of cotton for warehousing in this area as to Seguin only, and would not benefit them if the market conditions as between Seguin and the other towns and cities in this area should become reversed. It thus, in effect, grants to the bonded warehouses in Seguin a privilege that is denied all other bonded warehouses in the prescribed area under the same conditions. And if the Railroad Commission is to make an exception to a general rule founded on sound public policy, encouraged by legislation, and designed to promote the building of warehouses, in favor of every market where there is a bonded warehouse, upon a showing that cotton brings a better price on that par-

ticular market than at a neighboring or competing point where a bonded warehouse may be located, it is manifest that the efficacy of such general rule will seriously suffer, and its purposes be greatly hampered if not destroyed.

We do not deem it necessary to discuss the matter at greater length. We find that the trial court was not guilty of abusing his discretion in granting the temporary injunction complained of, and that there was sufficient evidence to sustain his order refusing to dissolve it. This disposes of the issues raised, and the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

[7, 8] Appellants present an able motion for rehearing in which they urge forcefully that the rules and exceptions, promulgated by the Railroad Commission after a full hearing upon the merits of a controversy before three experts, should not be set aside by a district court by injunction upon a sworn petition, or ex parte hearing, and that article 6656, R. S., discloses an intention on the part of the Legislature that the Commission's orders should remain in full force unless and until finally set aside after a determination of the case upon its merits in a court of competent jurisdiction. It is not our function to pass upon the wisdom of legislative action. There may be cogent reasons for the contention urged by appellants, but their remedy is with the Legislature, not with the courts. The language of the Supreme Court, quoted in our opinion herein, interprets the provision of article 6657 that an action to set aside an order of the Commission "shall be tried and determined as other civil causes in said court," as meaning, in our opinion, that except as to the burden of proof, there shall be no difference between such suit and any other civil suit, from the time the cause is filed or presented to the court until final judgment is rendered therein. The meaning of the words "tried and determined" cannot, we think, be limited so as to uphold a ruling of the Commission until a final judgment is rendered thereon after a hearing upon the merits. If the Legislature had so intended, it could have been easily so stated. In the absence of such provision, and under the Supreme Court's interpretation of the statute as it now reads, the orders of the Railroad Commission, when called in controversy by suit, must be subject to the action of the courts in the same manner and subject to the same orders and method of procedure as any other civil suit, except where specifically stated otherwise.

The other matters raised in said motion have already been disposed of in our opinion, and we deem further discussion unnecessary. Appellants' motion is overruled.

Motion overruled.