I am authorized to state that Justice ZASTROW joins in this dissent.

**STATE ex rel. SOUTH DAKOTA ELECTRIC CONSUMERS, Plaintiff and Respondent,**

v.

**NORTHWESTERN PUBLIC SERVICE CO., Defendant and Appellant.**

No. 11956.

Supreme Court of South Dakota.

May 3, 1978.

James T. Goetz, Robert W. Hirsch, of Goetz, Hirsch & Haar, Yankton, for plaintiff and respondent.

James E. Doyle, of Doyle & Bierle, Yankton, John B. Wehde, of Benson, Beach, Wehde & Martin, Huron, Everett E. Hoyt & Merle D. Lewis, Huron, for defendant and appellant.

WOLLMAN, Justice.

This appeal comes to us as a sequel to our decision in *State ex rel. South Dakota Electric Consumers v. Northwestern Public Service Co.*, S.D., 232 N.W.2d 854 (hereinafter the *SDEC* case). Reference is made to our opinion in that case for a statement of the factual background that gave rise to the instant appeal. Essentially, we held in that case that Northwestern Public Service Co. (company) was entitled to collect the 15% rate increase it had put into effect on August 13, 1973, in view of the fact that the six cities there involved had not exercised their ratemaking authority until after the rate had been put into effect.

We were advised at oral argument in that case that the cities had adopted rate ordinances in May of 1974 that reduced the company's 15% increase to approximately an 8.5% increase. We have now remanded for further findings with respect to certain aspects of those rate ordinances. See # 11909, *Northwestern Public Service Co. v. Cities of Chamberlain, et al.*, 265 N.W.2d 867, opinion filed this day.

We must now decide whether the company is entitled to collect the full 15% increase it imposed on August 13, 1973, and, if so, to determine the period during which the increased rate may be collected.

The trial court held that the company must refund, with interest, the charges for electrical service during the period from August 13, 1973, to May 6, 1974, that exceeded the rates fixed by the ordinances adopted by the cities in May of 1974, as those rates might ultimately be determined to be reasonable. The company was also ordered to make a refund of those charges that exceeded those determined to be reasonable under the May 1974 ordinances for the period from May 6, 1974, to October 18, 1975, the date on which a new rate increase was approved by the South Dakota Public Utilities Commission.

The company contends that our decision in the *SDEC* case must be interpreted as permitting it to collect the full amount of the 15% rate increase from August 13, 1973, to the effective date of each of the May 1974 ordinances, which the company argues was not May 6, 1974, but the date occurring twenty days after the last publication of the ordinances. The cities contend that our opinion in the *SDEC* case was based upon the principle that the rates unilaterally fixed by the company are subject to the test of reasonableness, that the cities have now determined that an 8.5% increase is a reasonable rate, and that therefore the company must refund the difference between the 15% increase and the increase approved by the cities, as ultimately determined to be reasonable.

■ We conclude that the company's argument is well taken. Although it is true that in the *SDEC* case we quoted language from *City of Houston v. Memorial Ben Utility Company*, Tex.Civ.App., 331 S.W.2d 418, to the effect that in the absence of the exercise of ratemaking authority by a regulatory body a utility may fix its own rates, provided they are reasonable, we think that the cities read too much into that language. Obviously, the cities have exercised their ratemaking authority and have concluded that the 15% increase was unreasonable. That determination, however, operates prospectively only, for ratemaking is prospective in nature. See, e. g., *Pacific Telephone & Tel. Co. v. Public Utilities Com'n*, 62 Cal.2d 634, 44 Cal.Rptr. 1, 401 P.2d 353; *Rhode Island Consumers' Council v. Smith*, 111 R.I. 271, 302 A.2d 757; *Application of Northwestern Bell Telephone Co.*, 78 S.D. 15, 98 N.W.2d 170. The cities contend that this interpretation of our decision in the *SDEC* case would have the effect of permitting a utility to increase its rates by any amount it wished. The company responds by arguing that under the interpretation urged by the cities there would be no reason why the cities could not redetermine rates and order a refund for a period going back far earlier than August of 1973. Both arguments are equally fanciful. On August 13, 1973, and for many years before that date, the cities had the authority to regulate rates. The protection to their citizen consumers was available, albeit unused. Our decision in the *SDEC* case represented less than a literal application of the rule permitting unilateral rate increases by a utility, as Judge Rentto pointed out in his concurring and dissenting opinion in that case. We see no reason to tailor the rule even further to satisfy the desire of the cities to give retroactive effect to the belated exercise of their long-standing regulatory authority. Accordingly, we hold that the company is entitled to collect the full amount of the 15% rate increase from August 13, 1973, to the effective date of the ordinances adopted by the cities in May of 1974.

■ The next issue to be resolved is the matter of the effective dates of the rate ordinances. The ordinances themselves provide that the refund should cover the period from August 13, 1973, until the effective date of the ordinances and that the company's new rates, when accepted for filing, would be effective for bills rendered after May 6, 1974. The company contends that because SDCL 9–19–13 provides that, with certain exceptions not here material, ordinances shall take effect on the twentieth day after publication unless suspended by referendum, the effective dates range from May 27, 1974, in the city of Yankton, to June 7, 1974, in the city of Mitchell. The cities reply by quoting that portion of our opinion in the *SDEC* case that states:

> "In summary, we hold that although the company was entitled to unilaterally raise its rates by fifteen percent on August 13, 1973, said increase was effective only until such time as the cities determined, following the hearing held in March of 1974, that the fifteen percent increase should be reduced to the level set forth in the ordinances adopted in early May of 1974." 232 N.W.2d at 858.

However, we concluded our opinion in that case by stating that:

> "[T]he judgment of the circuit court will be modified to permit the company to charge and collect the rate increase imposed on August 13, 1973, up to the dates on which the ordinances reducing said rate increase were adopted by the cities in the spring of 1974 following the rate hearing held in March of 1974." 232 N.W.2d at 859.

We should, of course, have used more precise language in that opinion. When we spoke of ordinances that were adopted in May of 1974, we assumed what we now express—that the company's authority to charge and collect a higher rate terminated upon the dates the adopted ordinances became effective pursuant to SDCL 9–19–13. Accordingly, we hold that the company is entitled to collect the 15% rate increase from August 13, 1973, to the dates upon which the respective rate ordinances became effective under that statute.

■ There remains the question of determining the closing date of the period during which the company must refund the difference between the 15% rate increase and the rate that is finally determined to be reasonable under the May 1974 ordinances. The company contends that that refund period ends on the date that the cities adopted ordinances that approved a second rate increase following a hearing held in March of 1975. This second hearing dealt with the 13% rate increase that we discussed in the *SDEC* case.

The ordinances adopted by the cities with respect to the 13% rate increase, having effective dates ranging from June 26, 1975, to July 9, 1975, provided that the rate schedules required to be filed by the company should not be effective until accepted for filing and approved by the cities. As of the date of the final hearing in this proceeding in the lower court, held on February 12, 1976, the company had filed a new rate schedule only with the city of Aberdeen, which had joined with the six cities for the purpose of considering the 13% rate increase. The company contends that because the rate schedule filed with the city of Aberdeen was identical with that which would have been filed with the six cities, that filing should be deemed to be adequate compliance with the requirements of the ordinances. The company argues that the delay in filing was caused by the lack of cooperation on the part of the cities and their consultants in compiling the data necessary to prepare the new schedules. Moreover, the company argues that the effective dates of the rate increases related back to the effective dates of the ordinances.

The trial court held that the failure of the company to file new rate schedules in accordance with the ordinances prevented the ordinances from becoming operative and that therefore the period during which the refund of the excessive amount of the 15% rate increase should be made should run until October 18, 1975, the date a rate increase was approved by the South Dakota Public Utilities Commission.

We agree with the trial court's conclusion that the failure of the company to file rate schedules pursuant to the 1975 ordinances prevented the new rates from becoming effective. Having argued for a strict interpretation of the effective dates of the May 1974 ordinances, the company is hardly in a position to argue that the 1975 ordinances should be read so expansively as to permit the filing in Aberdeen to be construed as a constructive filing in the other six cities. Although the company submitted post-hearing evidence that it had filed new rate schedules with the cities on February 16, 1976, there is no record evidence that the cities ever approved those schedules. We therefore need not determine whether the belated filings operated to make the second rate increase retroactively effective to the effective dates of the 1975 ordinances.

Accordingly, the judgment is modified to provide that the company may retain the 15% rate increase collected from and after August 13, 1973, until the dates the respective ordinances adopted by the cities in May of 1974 became effective pursuant to SDCL 9–19–13. The judgment is further modified to provide that the company shall refund, with interest as specified in the judgment, the charges collected in excess of those rates finally determined to be reasonable under the ordinances adopted in May of 1974 from and after the dates those ordinances became effective pursuant to SDCL 9–19–13 and until October 18, 1975, the effective date of the rate increase approved by the South Dakota Public Utilities Commission. In all other respects the judgment, together with the stay of execution entered as a part thereof, is affirmed.

DUNN, C. J., and ZASTROW, J., and BRANDENBURG and JONES, Circuit Judges, concur.

BRANDENBURG, Circuit Judge, sitting for PORTER, J., disqualified.

JONES, Circuit Judge, sitting for MORGAN, J., disqualified.